# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

LOUIS G. RASETTA and JOHN J. SHAUGHNESSY,
as they are TRUSTEES, INTERNATIONAL UNION
OF OPERATING ENGINEERS LOCAL 4 HEALTH
AND WELFARE, PENSION AND ANNUITY FUNDS,
and LOUIS G. RASETTA and CHRISTOPHER
BARLETTA, as they are TRUSTEES, HOISTING AND
PORTABLE ENGINEERS LOCAL 4 APPRENTICE
AND TRAINING FUNDS and the INTERNATIONAL
UNION OF OPERATING ENGINEERS LOCAL 4,       C.A. No. 05-10071
NG                          Plaintiffs

vs.

CRANE RENTAL CO., INC.,
                    Defendant

and

BALDWIN CRANE & EQUIPMENT
CORPORATION LTD., INC.,
                    Reach-and-Apply Defendant

and

BANKNORTH N.A.,
                    Trustee

---

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

## I.    INTRODUCTION

This is an action brought to collect contributions due employee benefit funds under the

terms of a collective bargaining agreement.  Plaintiffs (hereinafter "the Funds") are employee

benefit plans.  Defendant Crane Rental Co., Inc. (hereinafter "Crane Rental") is a Massachusetts

corporation.  Reach-and-apply defendant Baldwin Crane & Equipment Corporation LTD., Inc.

("Baldwin Crane") is a Massachusetts corporation which owes payments to Crane Rental under the terms of its confirmed Chapter 11 bankruptcy plan of reorganization.  The Funds have a legal or equitable interest in any payments due Crane Rental from Baldwin Crane under the terms of this plan of reorganization.  The action has been brought pursuant to §§502(a)(3) and 515 of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1132(a)(3) and 1145 (hereinafter "ERISA").

The Court has exclusive jurisdiction of this action pursuant to §§502(a)(3) and (f) of ERISA, 29 U.S.C. §§1132(a)(3) and (f), without respect to the amount in controversy or the citizenship of the parties.

At this juncture, plaintiffs are before the Court on a Motion for Preliminary Injunction. Plaintiffs seek an order enjoining reach-and-apply defendant Baldwin Crane and its agents, servants, employees, attorneys, and upon those persons in active participation or concert with it and those persons acting at its command who receive actual notices of a Preliminary Injunction order by personal service or otherwise, and each and every one of them, from secreting, concealing, destroying, damaging, selling, transferring, pledging, encumbering, assigning, or in any way or manner disposing of or reducing the value of, or making any payment to defendant Crane Rental on account of sums that are due or will hereafter become due Crane Rental from Baldwin Crane under the terms of the confirmed plan of reorganization in Baldwin Crane's Chapter 11 bankruptcy.  See In re Baldwin Crane & Equipment Corporation, No. 03-18303 (Bankr. D. Mass. filed Oct. 3, 2003).  Moreover, Plaintiffs respectfully request that this honorable Court order that all amounts owed to Crane Rental under the terms of Baldwin Crane's plan of reorganization instead be paid by Baldwin Crane directly to the Funds, in partial satisfaction of Crane Rental's fringe benefit contribution delinquency.

II.    **STATEMENT OF FACTS**

On or about August 19, 1987, defendant Crane agreed in writing to be bound to the terms of a collective bargaining agreement with the International Union of Operating Engineers Local 4, effective from October, 2002 through May, 2004 ("the Agreement") and to any successor agreements. See Complaint, par. 11; Affidavit of James Bucci ("Bucci Aff."), par. 2. The Agreement requires Crane to make contributions to Plaintiff Funds and to the Social Action Committee ("SAC"), in amounts set forth in the Agreement, for each payroll hour and proportionately for each part of such an hour for each person covered by the Agreement and employed on construction projects on which the Company is engaged. Bucci Aff., par. 3. Pursuant to the Agreement, Crane is also obligated to deduct and remit a negotiated percentage of the gross wage package, before taxes, for union dues. Id.

On or about March 3, 2004, Crane entered into a payment schedule with the Funds to pay the $153,627.69 in contributions and interest that it owed the Funds for the period January through December, 2003 but had failed to pay. Bucci Aff., par. 4. According to the schedule, Crane was obligated to pay $1,815.00 per week in addition to all new contributions as they came due. Id. Crane made some of the payments required by the payment agreement but still owes the Funds $79,091.96 in contributions for the period January through December, 2003. Bucci Aff., par. 5. In addition, Crane subsequently became delinquent for the months of February and August through November, 2004 and owes the Funds an additional $127,635.23 in contributions as a result. Bucci Aff., par. 6. The Funds have sent letters notifying Crane of this delinquency, and their counsel sent Crane a certified letter dated December 22, 2004 that sought payment of the delinquent contributions and interest. Bucci Aff., par. 7. However, to date, Crane has failed to pay the Funds the contributions and interest that remain due and owing. Bucci Aff., par. 8.

Further, according to its remittance reports, Crane deducted dues from its employees' paychecks during the period February, 2004 and August through November, 2004 and failed to remit them to the Union. As a result, it owes the Union $5,690.65 in dues for this period. Bucci Aff., par. 9. Crane is also obligated under the Agreement to make contributions to the SAC Fund. According to its remittance reports, it owes the Union $412.94 in SAC contributions for the periods February, 2004 and August through November, 2004. Bucci Aff., par. 10.

Crane Rental has an allowed unsecured claim as a general creditor of Baldwin Crane in Baldwin Crane's Chapter 11 bankruptcy. See Schedule F to Baldwin Crane's Disclosure Statement, a true and accurate copy of which is attached hereto as Exhibit A. Under Baldwin Crane's Third Amended Plan of Reorganization, holders of such unsecured claims consist of Class Twenty-Two and are entitled to "a dividend of approximately 60% of the sums as filed or scheduled." See Baldwin Crane's Third Amended Plan of Reorganization, a true and accurate copy of which is attached hereto as Exhibit B. This dividend is to be made in three equal monthly installments, with the first installment being paid on the Effective Date of Confirmation, which was May 1, 2005. See Order Confirming Modified Third Amended Plan of Reorganization Dated April 1, 2005, a true and accurate copy of which is attached hereto as Exhibit C. Upon information and belief, Crane Rental is to receive three monthly installments totaling $67,000.00 under the terms of Baldwin Crane's confirmed reorganization plan. Bucci Aff., par. 11.

III.    **ARGUMENT**

Injunctive relief is specifically authorized by §502(a)(3) of ERISA, 29 U.S.C.

§1132(a)(3).  Laborers' Fringe Benefit Funds, Detroit and Vicinity v. Northwest Concrete &

Construction, Inc., 640 F.2d 1350, 1352 (6th Cir. 1981) ("Northwest Concrete").  A motion for

preliminary injunction is addressed to the sound discretion of the court.  LeBeau v. Spirito, 703

F.2d 639, 642 (1st Cir. 1983).  The standard to be used by the district court in ruling on a motion

for preliminary injunction is well established.

> In deciding whether to grant a preliminary injunction, a district
> court must weigh the following four factors:  1) the likelihood of
> the movant's success on the merits; 2) the potential for irreparable
> harm to the movant; 3) a balancing of the relevant equities, i.e.
> "the hardship to the nonmovant if the restrainer issues as
> contrasted with the hardship to the movant if interim relief is
> withheld", Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st
> Cir. 1991); and 4) the effect on the public interest of a grant or
> denial of the injunction.

Gately v. Comm. of Mass., 2 F.3d 1221, 1224 (1st Cir. 1993), cert. denied, 114 S.Ct. 1832

(1994) ("Gately"); Caroline T. v. Hudson School Dist., 915 F.2d 752, 754-755 (1st Cir. 1990);

Agency Rent-A-Car, Inc. v. Connolly, 686 F.2d 1029, 1034 (1st Cir. 1982).  Examination of

each of these factors establishes that plaintiffs are entitled to the relief requested.

1)    **Likelihood of Success**

"[T]he sine qua non of [the preliminary injunction standard] is whether the plaintiffs are

likely to succeed on the merits."  Gately, supra, 2  F.3d at 1225, citing Weaver v. Henderson, 984

F.2d 11, 12 (1st Cir. 1993).  The exhibits and affidavits on file establish that plaintiffs will

prevail on the merits.

Massachusetts General Laws chapter 214, §3(6) is the Commonwealth's reach-and-apply

statute.  Under this statute, the Court must engage in a two-step process to establish (1) the

indebtedness of the defendant and (2) that the defendant has property that can be reached by the

plaintiffs in satisfaction of the defendant's debt.  Hunter v. Youthstream Media Networks, Inc.,

241 F.Supp.2d 52, 57 (D.Mass. 2002).  This two-step process is further explained as follows:

> The first step is in the nature of an action at law and requires the
> plaintiff to establish the debt owed by the principal defendant to
> the plaintiff.  Massachusetts Electric Company v. Athol One, Inc.,
> 391 Mass. 685 (Mass. 1984) ("in the first step," the plaintiff must
> show the existence of a debt owed to the plaintiff by "the principal
> defendant") .  .  .  "The second step involves the process of
> satisfying the debt," .  .  . "out of the property held by one who
> owes a debt to the principal defendant."  Massachusetts Electric
> Company v. Athol One, Inc., 391 Mass. at 687 .  .  .  Under chapter
> 214, the plaintiff "must show that the property, by its nature, is
> incapable of attachment or of taking on execution in a legal
> action."  Massachusetts Electric Company v. Athol One, Inc., 391
> Mass. at 687 .  .  .

Trustees v. Baldwin Steel Co., Inc., 2001 WL 1555539, *3-*5 (D.Mass. 2001).

Crane is signatory to an Agreement which requires it to make contributions to Plaintiff

Funds in amounts set forth in the Agreement for each payroll hour and proportionately for each

part of such an hour for each person covered by the Agreement and employed on construction

projects on which the Company is engaged.  Bucci Aff., par. 3.  Pursuant to the Agreement,

Crane is also obligated to deduct and remit a negotiated percentage of the gross wage package,

before taxes, for union dues.  Id.  On or about March 3, 2004, Crane entered into a payment

schedule with the Funds to pay the $153,627.69 in contributions and interest that it owed the

Funds for the period January through December, 2003 but had failed to pay.  Bucci Aff., par. 4.

Crane made some of the payments required by the payment agreement but still owes the Funds

$79,091.96 in contributions for the period January through December, 2003.  Bucci Aff., par. 5.

In addition, Crane subsequently became delinquent for the months of February and August

through November, 2004 and owes the Funds an additional $127,635.23 in contributions as a result.  Bucci Aff., par. 6.

Further, according to its remittance reports, Crane deducted dues from its employees' paychecks during the period February, 2004 and August through November, 2004 and failed to remit them to the Union.  As a result, it owes the Union $5,690.65 in dues for this period.  Bucci Aff., par. 9.  Crane is also obligated under the Agreement to make contributions to the SAC Fund.  According to its remittance reports, it owes the Union $412.94 in SAC contributions for the periods February, 2004 and August through November, 2004.  Bucci Aff., par. 10.  Thus, the existence of a debt owed to the plaintiff by the principal defendant has been clearly established.

The Funds wish to satisfy the defendant's debt, in part, out of payments owed Crane Rental by Baldwin Crane under the terms of Baldwin Crane's confirmed plan of reorganization.  Crane Rental has an allowed unsecured claim as a general creditor of Baldwin Crane in Baldwin Crane's Chapter 11 bankruptcy.  Under Baldwin Crane's Third Amended Plan of Reorganization, holders of such unsecured claims consist of Class Twenty-Two and are entitled to "a dividend of approximately 60% of the sums as filed or scheduled."  This dividend is to be made in three equal monthly installments, with the first installment being paid on the Effective Date of Confirmation.  Upon information and belief, Crane Rental is to receive three monthly installments totaling $67,000.00 under the terms of Baldwin Crane's confirmed Third Amended Plan of Reorganization.

Pursuant to 11 U.S.C. § 362(c) and the explicit language of the Order Confirming Modified Third Amended Plan of Reorganization Dated April 1, 2005, the automatic stay in Baldwin Crane's bankruptcy terminated upon the Effective Date of Confirmation, or May 1, 2005.  Thus, the Funds now have a legal or equitable interest in any payments due Crane Rental

from Baldwin Crane under the terms of Baldwin Crane's confirmed plan of reorganization. Further, payments held by Baldwin Crane pursuant to its reorganization cannot be attached or taken on execution except pursuant to G.L. c. 214, §3(6).

### 2)      Irreparable Harm

If reach-and-apply defendant Baldwin Crane was to secret, conceal, destroy, damage, sell, transfer, pledge, encumber, assign, or in any way or manner dispose of or reduce the value of, or make any payment to defendant Crane Rental on account of sums that are due or will hereafter become due Crane Rental from Baldwin Crane under the terms of Baldwin Crane's plan of reorganization, it would render the Funds unable to fully satisfy their fiduciary and statutory obligations to the Funds' beneficiaries and participants.  "ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled . . ." Central States Pension Fund, 472 U.S. at 571.  The Funds are entitled to contributions for all work performed by Crane Rental's employees.  Bucci Aff., par. 3.

### 3)      Balancing of Harms

"The heart of the matter is whether 'the harm caused plaintiff without the injunction, in light of the plaintiff's likelihood of eventual success on the merits, outweighs the harm the injunction will cause defendants.'" Gately, supra, 2 F.3d at 1225, quoting Vargas-Figueroa v. Saldana, 826 F.2d 160, 162 (lst Cir. l987) (emphasis in original).

No harm can come to the reach-and-apply defendant by being enjoined from disbursing payments that it already owes the defendant under its confirmed plan of reorganization and, instead, directing those payments toward the Funds.  The demonstrated harm to plaintiffs far outweighs any harm to the reach-and-apply defendant.

4)    **Public Interest**

Congress declared it to be the policy of ERISA to "protect . . . the interest of

participants in employee benefit plans and their beneficiaries . . . by providing for appropriate

remedies, sanctions, and ready access to Federal courts."  29 U.S.C. §1001(b).  The House

Report on the Act's enforcement provisions states that they are

> designed specifically to provide both the Secretary and participants
> and beneficiaries with broad remedies for redressing or preventing
> violations of the Act.  The intent of the committee is to provide the
> full range of legal and equitable remedies available in both state
> and federal courts and to remove jurisdictional and procedural
> obstacles which in the past appear to have hampered effective
> enforcement of fiduciary responsibilities . . .

H.R. Rep. No. 93-533, 93d Cong., 2d Sess. 17, reprinted in [1974] U.S. Code Cong. & Ad.

News, p. 4639, 4655.

The federal courts have interpreted this legislative history as "unambiguous evidence"

that Section 502's enforcement provisions are intended to "have teeth" and to be "liberally

construed."  Northwest Concrete, supra, at 1352.  "Given the array of remedies that ERISA

provides for redressing and preventing violations of the statute, it is not surprising that federal

courts have frequently resorted to injunctive relief when it has been perceived as necessary to

fully protect the statutory and contractual rights of Fund participants and beneficiaries."

Metropolitan D.C. Paving Industry Employees Health and Welfare Trust Fund  v.  Jones &

Artis Construction Co., 2 EBC 2227, 2223 (D. D.C., 1991).

"Congress made it abundantly clear that an employer would not be permitted to

circumvent or ignore its funds, payment and other obligations under ERISA."  A & G, citing

Northwest Concrete, supra, at 1352.  The public interest in preserving the integrity of employee

pension, health, and welfare plans would be furthered by issuance of the preliminary injunction.

IV.    **CONCLUSION**

For all of the foregoing reasons, plaintiffs respectfully submit that their Motion for

Preliminary Injunction should be granted.

> Respectfully submitted,
>
> LOUIS G. RASETTA and JOHN J.
> SHAUGHNESSY, as they are TRUSTEES,
> INTERNATIONAL UNION OF
> OPERATING ENGINEERS LOCAL 4
> HEALTH AND WELFARE FUND, et al,
>
> By their attorneys,
>
> /s/ Gregory A. Geiman
> Anne R. Sills, Esquire
> BBO #546576
> Gregory A. Geiman, Esquire
> BBO #655207
> Segal, Roitman & Coleman
> 11 Beacon Street
> Suite #500
> Boston, MA  02108
> (617) 742-0208

Dated:  May 12, 2005

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the above Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction has been served by first class mail upon Defendant's attorney Michael B. Feinman at Feinman Law Offices, 23 Main Street, Andover, MA  01810 and upon Reach-and-Apply Defendant's attorney Nina M. Parker at Parker & Associates, 10 Converse Place, Winchester, MA  01890 this 12th day of May, 2005.

> /s/ Gregory A. Geiman
> Gregory A. Geiman, Esquire

GAG/gag&ts
ARS 3118 04-514/memsupmotpj.doc

In re    **Baldwin Crane and Equipment Corporation**                 Case No.    __03-18303-JNF__

_____
Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and account number, if any, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐ Check this box if debtor has no creditors holding unsecured nonpriority claims to report on this Schedule F.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H W | J | C | | | | | |
| Account No. | | | | | | | | | |
| A.I. Credit Corporation<br>P.O. Box 9045<br>New York, NY 10087 | - | | | | | | | | Unknown |
| Account No. | | | | | | | | | |
| ABC Welding Service<br>9 Boxcar Boulevard<br>Tewksbury, MA 01876 | - | | | | | | | | 3,825.00 |
| Account No. 44-23575-7 | | | | | | | | | |
| AFCO<br>Department LA 21315<br>Pasadena, CA 91185 | - | | | | | | | | Unknown |
| Account No. | | | | | | | | | |
| Applied Industrial Technologies<br>22510 Network Place<br>Chicago, IL 60673 | - | | | | | | | | 39.93 |

__19__  continuation sheets attached

Subtotal<br>(Total of this page)          3,864.93

In re    **Baldwin Crane and Equipment Corporation** _____,    Case No. ___**03-18303-JNF**___

Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T O R | H W J C | Husband, Wife, Joint, or Community — DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | |
| Applied Industries<br>240 Ballardvale Street<br>Wilmington, MA 01887 | | - | | | | | 426.09 |
| Account No. | | | | | | | |
| Beckwith Machinery Company<br>4565 William Penn Highway<br>Murrysville, PA 15668 | | - | | | | | 641.73 |
| Account No. | | | | | | | |
| Boston Freightliner, Inc.<br>3-5 Bow Street<br>Everett, MA 02149 | | - | | | | | 111.52 |
| Account No. | | | | | | | |
| Boston Police Detail<br>Billing Department<br>P.O. Box 191776<br>Boston, MA 02119 | | - | | | | | 6,372.86 |
| Account No. | | | | | | | |
| Browning-Ferris Industries<br>BFI Tyngsboro Division<br>P.O. Box 830107<br>Baltimore, MD 21283 | | - | | | | | 856.00 |

Sheet no. __1__ of __19__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)    **8,408.20**

In re    **Baldwin Crane and Equipment Corporation**                          Case No.    __03-18303-JNF__

_____
Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | Service Charge | | | | |
| C.N. Brown<br>Jay H/O<br>94 Main Street<br>Jay, ME 04239 | | - | | | | | 7.96 |
| Account No. | | | | | | | |
| Cambridge Police Detail Fund<br>P.O. Box 268<br>Cambridge, MA 02139 | | - | | | | | 306.80 |
| Account No. | | | | | | | |
| Castrol Heavy Duty Lubricants<br>12286 Collections Center Drive<br>Chicago, IL 60693 | | - | | | | | 3,643.12 |
| Account No. | | | | | | | |
| City Crane<br>286 East Main Street<br>PO Box 485<br>Avon, MA 02322 | | - | | | | | 1,967.01 |
| Account No. | | | | | | | |
| CleanHarbors Environmental Service<br>P.O. Box 3442<br>Boston, MA 02241 | | - | | | | | 130.00 |

Sheet no. __2__ of __19__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                                              6,054.89

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                 Best Case Bankruptcy

In re    **Baldwin Crane and Equipment Corporation**                    ,    Case No.    03-18303-JNF
                                                                Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | H W | J C | | | | | |
| Account No. | | | | | | | | |
| **Columbia Auto Seat Covers** **165 South Broadway** **Lawrence, MA 01843** | - | | | | | | | 96.50 |
| Account No. | | | | | | | | |
| **Commercial Business Products** **12 Bay Street** **Unit 102** **Wilmington, MA 01887** | - | | | | | | | 531.00 |
| Account No. | | | | | | | | |
| **Construct Oil Company** **53 Harrington Avenue** **Unit B** **Warwick, RI 02888** | - | | | | | | | 94.56 |
| Account No. | | | | | | | | |
| **Crane & Shovel Sales Corporation** **26781 Cannon Road** **Bedford, OH 44146** | - | | | | | | | 7,517.97 |
| Account No. | | | | | | | | |
| **Crane Carrier Handbook** **P.O. Box 4528** **Midway, KY 40347** | - | | | | | | | 55.00 |

Sheet no. __3__ of __19__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)    8,295.03

In re    **Baldwin Crane and Equipment Corporation**                   Case No.   **03-18303-JNF**

_____
Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T O R | H W J c | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | |
| Crane Rental Company, Inc.<br>205 Main Street<br>P.O. Box 66<br>Tewksbury, MA 01876 | | - | | | | | 79,438.88 |
| Account No. | | | | | | | |
| Cummins Northeast, Inc.<br>100 Allied Drive<br>Dedham, MA 02026 | | - | | | | | 338.45 |
| Account No. | | | | | | | |
| D&G Enterprises<br>P.O. Box 370<br>Chelmsford, MA 01824 | | - | | | | | 4,467.80 |
| Account No. | | | | | | | |
| Daily Times Union<br>One Arrow Drive<br>Woburn, MA 01801 | | - | | | | | 165.70 |
| Account No. | | | | | | | |
| Direct Fuel, Inc.<br>18 Rutledge Road<br>Peabody, MA 01960 | | - | | | | | 1,697.63 |

Sheet no. __4__ of __19__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)        86,108.46

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

In re    **Baldwin Crane and Equipment Corporation**                              Case No.    **03-18303-JNF**

_____
Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T O R | H W J C | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| Account No. <br><br> **Driscoll Tire** <br> **576 Haverhill Street** <br> **P.O. Box 265** <br> **Lawrence, MA 01842** | | - | | | | | | 2,238.00 |
| Account No. <br><br> **Ernest Baldwin** <br> **145 Orchard Street** <br> **Byfield, MA 01922** | | - | | | | | | Unknown |
| Account No. <br><br> **Ernest Baldwin Jr.** <br> **2 Boston Road** <br> **Andover, MA 01810** | | - | | | | | | Unknown |
| Account No. 6750 <br><br> **Flagship Press, Inc.** <br> **150 Flagship Drive** <br> **North Andover, MA 01845** | | - | | | | | | 791.25 |
| Account No. <br><br> **Flowers by Steve** <br> **PO Box 8181** <br> **Haverhill, MA 01835** | | - | | | | | | 288.40 |

Sheet no. __5__ of __19__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)          3,317.65

In re    **Baldwin Crane and Equipment Corporation**                     Case No. __03-18303-JNF__

                                              Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T O R | H W / J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | |
| Full Circle Carriers, Inc.<br>91 Wheeling Avenue<br>Staten Island, NY 10309 | | - | | | | | 905.00 |
| Account No. | | | | | | | |
| Gadsby Hannah<br>225 Franklin Street<br>Boston, MA 02110 | | - | | | | | 11,815.97 |
| Account No. | | | | | | | |
| Gelerman, Buschmann & Nicholas, P.C.<br>30 Walpole Street<br>Norwood, MA 02062 | | - | | | | | 279.90 |
| Account No. 043266118 | | | | | | | |
| Glass Master<br>214 Andover Street<br>Wilmington, MA 01887 | | - | | | | | 338.10 |
| Account No. | | | | | | | |
| Hanover Insurance Company<br>P.O. Box 8016<br>Boston, MA 02266 | | - | | | | | 10,837.75 |

Sheet no. __6__ of __19__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)    24,176.72

In re  **Baldwin Crane and Equipment Corporation**                    Case No. __03-18303-JNF__

                                          Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
| | | H W | J C | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | | | |
| Hoffman International, Inc. 300 South Randolphville Road Piscataway, NJ 08855 | | - | | | | | | | 34,387.88 |
| Account No. | | | | | | | | | |
| Holland & Knight, LLP Administration and Accounting 1916 Harden Boulevard P.O. Box 32092 Lakeland, FL 33802 | | - | | | | | | | 8,977.93 |
| Account No. | | | | | | | | | |
| J.A. Miara 140 West Street Wilmington, MA 01887 | | - | | | | | | | 10,500.00 |
| Account No. | | | | | | | | | |
| Kraft Power Corporation 199 Wildwood Avenue P.O. Box 2189 Woburn, MA 01888 | | - | | | | | | | 785.25 |
| Account No. 27111-0001 | | | | | Legal Fees | | | | |
| Lindabury, McCormick & Estabrook 53 Cardinal Drive PO Box 2369 Westfield, NJ 07091 | | - | | | | | | | 3,134.17 |

Sheet no. __7__ of __19__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

                                          Subtotal
                                          (Total of this page)          57,785.23

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                Best Case Bankruptcy

In re    **Baldwin Crane and Equipment Corporation**                    Case No. __03-18303-JNF__
                                                    Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | |
| Lubrication Equipment and Accessories 137 Mystic Avenue Medford, MA 02155 | | - | | | | | 179.52 |
| Account No. | | | | | | | |
| Lynch Products 96 Cross Street Norwood, MA 02062 | | - | | | | | 95.55 |
| Account No. | | | | | | | |
| M&C Trucking 400 Keck Street P.O. Box 430 Seward, PA 15954 | | - | | | | | 11,700.00 |
| Account No. | | | | | | | |
| M. W. Leahy 21 Westford Road P.O. Box 87 Ayer, MA 01432 | | - | | | | | 24,584.85 |
| Account No. | | | | | | | |
| M.L. Halle Oil 195 Lincoln Street Manchester, NH 03105 | | - | | | | | 335.12 |

Sheet no. __8__ of __19__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                    36,895.04

In re   **Baldwin Crane and Equipment Corporation**                                    Case No. __03-18303-JNF__

                                            Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF. SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | |
| Mahoney Oil P.O. Box 491 Belmont, MA 02478 | | - | | | | | 200.45 |
| Account No. | | | | | | | |
| Malco Equipment Corporation 125 Pompton Plains Crossroad Wayne, NJ 07470 | | - | | | | | 1,500.00 |
| Account No. | | | | | | | |
| Manitowoc Cranes, Inc. 2401 South 30th Street P.O. Box 70 Manitowoc, WI 54221 | | - | | | | | 1,600.00 |
| Account No. | | | | | | | |
| Mark Baldwin 5 Prides Circle Andover, MA 01810 | | - | | | | | Unknown |
| Account No. | | | | | | | |
| Massachusetts Turnpike Authority Engineering and Maintenance John T. Driscoll Building 668 South Avenue Weston, MA 02493 | | - | | | | | 350.00 |

Sheet no. __9__ of __19__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)

3,650.45

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                     Best Case Bankruptcy

In re    **Baldwin Crane and Equipment Corporation**                                    Case No.    **03-18303-JNF**

Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
| | | H W | J C | | | | | |
|---|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | | |
| Maxequip, Inc. 167 Milk Street Suite 144 Boston, MA 02109 | | - | | | | | | 338.23 |
| Account No. | | | | | | | | |
| Mobile Sales & Service P.O. Box 1542 Littleton, MA 01460 | | - | | | | | | 215.27 |
| Account No. | | | | | | | | |
| Montrose Hydraulics 581 Salem Street P.O. Box 259 Wakefield, MA 01880 | | - | | | | | | 172.46 |
| Account No. #03905 | | | | | | | | |
| Moores Crane 33 Littleworth Road Dover, NH 03820 | | - | | | | | | 4,867.38 |
| Account No. | | | | | | | | |
| Morrow Equipment Company, LLC c/o Michael E. Knapp 2355 State Street Salem, OR 97301 | | - | | | | | X | 0.00 |

Sheet no. __10__ of __19__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)    **5,593.34**

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

In re    **Baldwin Crane and Equipment Corporation**                    Case No.    03-18303-JNF

                                            Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.<br><br>Myron Corporation<br>P.O. Box 802616<br>Chicago, IL 60680 | | - | | | | | 374.08 |
| Account No.<br><br>National City Bank, P.A.<br>Operating Engineers Local Union NN 66<br>P.O. Box 400109<br>Pittsburgh, PA 15268 | | - | | | | | 18,686.87 |
| Account No. 0012173083-2<br><br>Nextel Communications<br>P.O. Box 820832<br>Philadelphia, PA 19182-0832 | | - | | | | | 2,091.00 |
| Account No.<br><br>Nicholas Transport<br>19-A Crows Mill Road<br>Keasbey, NJ 08832 | | - | | | | | 10,953.00 |
| Account No.<br><br>North Shore Radiological Associates<br>P.O. Box 80074<br>Stoneham, MA 02180 | | - | | | | | 24.00 |

Sheet no. __11__ of __19__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                    32,128.95

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

In re    **Baldwin Crane and Equipment Corporation**    Case No.    03-18303-JNF

Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
| | | H W J C | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | | |
| Northeast Crane and Rigging Service 11 Groveland Street Seabrook, NH 03874 | | - | | | | | | 4,194.62 |
| Account No. | | | | | | | | |
| O.B. Hill Trucking & Rigging P.O. Box 175 Natick, MA 01760 | | - | | | | | X | 5,502.57 |
| Account No. | | | | | | | | |
| Palmer Springs Company 7 Walnut Hill Park Woburn, MA 01801 | | - | | | | | | 405.40 |
| Account No. | | | | | | | | |
| Phil's Signs 1057 Main Street Haverhill, MA 01830 | | - | | | | | | 2,131.00 |
| Account No. | | | | | | | | |
| Philip Rand 139 California Street Newton, MA 02458 | | - | | | | | | 31,406.85 |

Sheet no. __12__ of __19__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)    43,640.44

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037    Best Case Bankruptcy

In re    **Baldwin Crane and Equipment Corporation**

Case No. ___03-18303-JNF___

Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. <br><br>**Prime Pay**<br>**52A Cummings Park**<br>**Woburn, MA 01801** | | - | | | | | 747.16 |
| Account No. <br><br>**Primus**<br>**P.O. Box 3018**<br>**Milwaukee, WI 53201** | | - | | | | | 1,063.31 |
| Account No. <br><br>**R&M Freight**<br>**P.O. Box 1894**<br>**Seabrook, NH 03874** | | - | | | | | 18,641.65 |
| Account No. <br><br>**R.A. Hall**<br>**183 State Street**<br>**Boston, MA 02109** | | - | | | | | 31,488.00 |
| Account No. <br><br>**R.E. Crowley**<br>**124 Nod Road**<br>**Groton, MA 01450** | | - | | | | | 14,130.00 |

Sheet no. ___13___ of ___19___ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)

66,070.12

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

In re    **Baldwin Crane and Equipment Corporation**                           Case No.   **03-18303-JNF**
                                              Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.<br><br>**R.H. Northrop Corporation**<br>**1 Melvin Street**<br>**Wakefield, MA 01880** | | - | | | | | 743.90 |
| Account No.<br><br>**R.P. Reynolds Insurance Agency, Inc.**<br>**139 Weymouth Street**<br>**Suite 2**<br>**Rockland, MA 02370** | | - | | | | | 5,403.55 |
| Account No. 080347601<br><br>**Reading Municipal Light Department**<br>**25 Haven Street**<br>**Reading, MA 01867** | | - | | | | | 168.88 |
| Account No.<br><br>**Registry of Motor Vehicles**<br>**14 Beach Street**<br>**Milford, MA 01757** | | - | | | | | 1,800.00 |
| Account No.<br><br>**S.P.I. Transport Systems, Inc.**<br>**116 Truman Drive**<br>**Edison, NJ 08117** | | - | | | | | 1,784.25 |

Sheet no. __14__ of __19__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                9,900.58

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                           Best Case Bankruptcy

In re   **Baldwin Crane and Equipment Corporation**                          Case No.   **03-18303-JNF**
_____
                                    Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.  **Claim #00838260-1** <br><br> **Scottsdale Insurance** <br> **PO Box 4120** <br> **Scottsdale, AZ 85261** | | - | | | | | 168.07 |
| Account No. <br><br> **Shawmut Equipment** <br> **20 Tolland Turnpike** <br> **Manchester, CT 06040** | | - | | | | | 29,611.14 |
| Account No. <br><br> **Simpson's, Inc.** <br> **26 International Way** <br> **Lawrence, MA 01843** | | - | | | | | 907.11 |
| Account No. <br><br> **Southworth-Milton** <br> **P.O. Box 3851** <br> **Boston, MA 02241** | | - | | | | | 9,539.45 |
| Account No. **0049241050-2** <br><br> **Sprint PCS** <br> **P.O. Box 62071** <br> **Baltimore, MD 21264** | | - | | | | | 129.95 |

Sheet no. __15__ of __19__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                 40,355.72

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

In re     **Baldwin Crane and Equipment Corporation**                              Case No.  __03-18303-JNF__
                                                    Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | |
| Suppliers Automotive Parts Company<br>4 Middlesex Ave<br>Wilmington, MA 01887 | | - | | | | | 41.19 |
| Account No. | | | | | | | |
| Taurus Lubricants Corporation<br>P.O. Box 152<br>Tewksbury, MA 01876 | | - | | | | | 96.00 |
| Account No. 40226000 | | | | | | | |
| Taylor Oil<br>176 Centre Street<br>Holbrook, MA 02343 | | - | | | | | 21,284.95 |
| Account No. | | | Parking Ticket | | | | |
| Town of Tewksbury<br>Parking Clerk<br>Town Hall<br>1009 Main Street<br>Tewksbury, MA 01876 | | - | | | | | 25.00 |
| Account No. | | | | | | | |
| Tristate Textiles, Inc.<br>P.O. Box 158<br>Hudson, NH 03051 | | - | | | | | 195.00 |

Sheet no. __16__ of __19__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                    21,642.14

In re    **Baldwin Crane and Equipment Corporation**                    Case No. __03-18303-JNF__
                                                    Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | |
| Unishippers Assocation<br>100 Cummings Center<br>Suite 321A<br>Beverly, MA 01915 | | - | | | | | 336.10 |
| Account No. | | | | | | | |
| University Sports Publications<br>350 Massachusetts Avenue<br>Department 119<br>Arlington, MA 02474 | | - | | | | | 495.00 |
| Account No. | | | | | | | |
| Vergona Crane Co., Inc<br>180 West Forest Avenue<br>Englewood, NJ 07631 | | - | | | | | 3,250.00 |
| Account No. 978-465-1851 | | | | | | | |
| Verizon<br>P.O. Box 15150<br>Worcester, MA 01615 | | - | | | | | 122.40 |
| Account No. 978-657-7555 | | | | | | | |
| Verizon<br>P.O. Box 15150<br>Worcester, MA 01615 | | - | | | | | 1,522.82 |

Sheet no. __17__ of __19__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                5,726.32

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

In re     **Baldwin Crane and Equipment Corporation**                         Case No. ___03-18303-JNF___

                                                    Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. 978-758-7671 | | | | | | | |
| Verizon<br>P.O. Box 489<br>Newark, NJ 07101 | | - | | | | | 72.76 |
| Account No. | | | | | | | |
| Verizon<br>P.O. Box 489<br>Newark, NJ 07101 | | - | | | | | 91.15 |
| Account No. 101019355 508 954 5731 | | | | | | | |
| Verizon<br>P.O. Box 489<br>Newark, NJ 07101 | | - | | | | | 127.11 |
| Account No. 040088351 | | | | | | | |
| Verizon Wireless<br>P.O. Box 489<br>Newark, NJ 07101 | | - | | | | | 176.41 |
| Account No. | | | | | | | |
| Warren J. Parece Company<br>165 Tremont Street<br>Melrose, MA 02176 | | - | | | | | 318.00 |

Sheet no. __18__ of __19__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                    785.43

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

In re     **Baldwin Crane and Equipment Corporation**                              Case No.  __03-18303-JNF__
                                                                        Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | |
| **Westford Welding and Repair** **18 Tadmuck Road** **Westford, MA 01886** | | - | | | | | **892.50** |
| Account No. | | | | | | | |
| **William Baldwin** **145 Orchard Street** **Byfield, MA 01922** | | - | | | | | **Unknown** |
| Account No. | | | | | | | |
| **William Baldwin Jr.** **27 Bradley Road** **Andover, MA 01810** | | - | | | | | **Unknown** |
| Account No. | | | | | | | |
| **Winchester Hospital** **41 Highland Avenue** **Winchester, MA 01890** | | - | | | | | **47.30** |
| Account No. 878864 | | | | | | | |
| **Xero-Fax, Inc.** **P.O. Box 65777** **Charlotte, NC 28265** | | - | | | | | **3,581.14** |

Sheet no. __19__ of __19__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)     **4,520.94**

Total
(Report on Summary of Schedules)     **468,920.58**

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: ) | |
| ) | |
| BALDWIN CRANE & EQUIPMENT CORPORATION ) | Chapter 11 |
| ) | Case No. 03-18303-JNF |
| DEBTOR ) | |

## THIRD AMENDED PLAN OF REORGANIZATION

Baldwin Crane & Equipment Corporation LTD, Inc. the Debtor here proposes the following Plan of Reorganization (the "Plan") to its creditors pursuant to Section 1121(a) of Chapter 11 of the Bankruptcy Code (11 U.S.C. 1121(a)) (the "Bankruptcy Code").

### ARTICLE I. DEFINITIONS

2.1     Administrative Claim shall mean the costs and expenses of administration of the Chapter 11 case as allowed under Section 503(b) of the Code, including, without limitation, any actual, necessary costs and expenses of preserving or operating the Debtor's estate, and all allowances of compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under Section 330 of the Code.

2.2     Allowed Claim shall mean any Claim proof of which was filed on or before the Bar Date, or that has been, or hereafter is, listed by either Debtor-in-Possession as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Bankruptcy Code or an order of the Court, or as to which any objection has been determined by an order or judgment that is no longer subject to appeal or certiorari proceeding, and as to which no appeal or certiorari proceeding is pending, after giving effect to any such order or judgment reducing or modifying such Claim.

Unless otherwise specified and in accordance with applicable laws, no allowed secured Claim shall include any component of interest on the principal amount of such Claim, as the Debtor is insolvent.

2.3     Bar Date shall mean the last day for filing claims in this proceeding, fixed by this Court pursuant to Rule 3003(c)(3) of the Rules of Bankruptcy Procedure. The Bar Date was December 22, 2003.

2.4    <u>Claim</u> shall mean any claim of whatever character against the Debtor, whether or not such claim is: provable under Section 502 of the Bankruptcy Code; reduced to judgment; liquidated or unliquidated; secured or unsecured; fixed or contingent; matured or unmatured; disputed or undisputed; a legal claim or a claim to an equitable remedy for breach of performance, if such breach gives rise to a right to payment.

2.5    <u>Claimant</u> shall mean any Person having a Claim against the Debtor that arose on or before the Filing Date or a Claim against the Debtor's estate of a kind specified in Section 502(g), (h) or (i) of the Code.

2.6    <u>Priority Claimant</u> shall mean the holder of an Allowed Priority Claim.

2.7    <u>Class</u> shall mean the category of holders of Claims that are substantially similar to the other Claims in such category.

2.8    <u>Code</u> means the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978, and as thereafter amended.

2.9    <u>Confirmation</u> shall mean the date on which the Debtor's proposed Plan of Reorganization is confirmed by order of the Bankruptcy Court.

2.10    <u>Court</u> shall mean the United States Bankruptcy Court for the District of Massachusetts including the United States Bankruptcy Judge presiding therein.

2.11    <u>Creditor</u> shall mean holder of an Allowed Claim.

2.12    <u>Debtor</u> shall mean Baldwin Crane & Equipment Corporation, Inc. also known as Baldwin Crane.

2.13    <u>Effective Date</u> shall mean not earlier than 30 days following the first business day following the last day on which an appeal from an order of the Court confirming the Debtor's Plan of Reorganization may be taken under applicable law and no such appeal has been taken or, if any appeal has been taken, the first business day following the date upon which all appeals have been exhausted and the Plan may be put into effect, whichever is later.  For purposes of distribution other than to creditors who have received payment of Adequate Protection during the pre-confirmation period, the phrase "paid upon the Effective Date" shall mean on the Effective Date or within a reasonable period thereafter so as to allow the writing and mailing of dividend checks. For the creditors who have received payment of Adequate Protection, monthly debt service shall commence on the 5th day of the first month following the payment of the final Adequate Protection which occurred before the last day on which an appeal from an order of the Court confirming the Debtor's Plan of Reorganization may be taken under applicable law and no such appeal has been taken or, if any appeal has been taken, the first business day following the 5th day of the month after all appeals have been exhausted and the Plan may be put into effect, whichever is later.  Payment of Adequate Protection shall not be suspended during the appeal period

2.14    Executory Contract shall mean any pre-petition executory contract or unexpired leases of the Debtors within the meaning of Section 365 of the Bankruptcy Code.

2.15    Fair Market Value shall mean the most probable price, as of a specified date, in cash, or in terms equivalent to cash, or in other precisely revealed terms for which the specified property rights should sell after reasonable exposure in a competitive market under all conditions requisite to a fair sale, with the buyer and seller each acting prudently, knowledgeably, and for self-interest, and assuming that neither is under undue duress.

2.16    Filing Date shall mean October 3, 2003, the date on which the Debtor filed the voluntary petition.

2.17    Final Order shall mean an order, judgment or decree of the Bankruptcy Court, which order shall not have been reversed, stayed, modified or amended and the time to appeal from the or to seek review or rehearing of such order shall have expired and which shall have become final in accordance with Rule 8002 of the Rules of Bankruptcy Procedure and any applicable local procedural rule.

2.18    Lien shall mean any charge against or interest in property to secure payment of a debt or performance of an obligation and includes, without limitation, any judicial lien, security interest, mortgage, and statutory lien as defined in 11 U.S.C. Section 101.

2.19    Liquidation Value shall mean the price that an owner is compelled to accept when a property must be sold without reasonable market exposure.

2.20    Plan shall mean the Plan of Reorganization, either in its present form or as it may be amended from time to time.

2.21    Pro Rata shall mean the same proportion that a Claimant in a particular Class bears to the aggregate amount of all Claims in that Class.

2.22    Secured Claim shall mean any Allowed Claim with respect to which a Security Interest is held in or against any property of the Debtor's estate, to the extent of the value of such Creditor's Interest in the estate's interest in such property. If the value of such creditor's interest is less than the amount of the Allowed Claim held by it, then such Creditor shall hold an Unsecured Claim for such deficiency amount.

2.23    Secured Creditor shall mean any Creditor holding a Secured Claim.

2.24    Security Interest shall mean a lien (as such term is defined in Section 101(31) of the Code) on any of the property of the Debtor's estate.

2.25    Unimpaired Creditor shall mean a Creditor whose interest is not materially and adversely affected by this Plan. In the event of controversy, the Court shall, after hearing and upon notice, determine whether any Creditor or class of Creditors is an Unimpaired Creditor.

## ARTICLE II. TREATMENT OF CLASSES AND INTERESTS

A.    ## CLASSIFICATION AND TREATMENT OF CLASSES AND INTERESTS

1)    ### Fees and Expenses of Professionals

The administrative expenses of the Debtors' Chapter 11 case, allowed pursuant to Section 503(b) of the Code and given priority by virtue of Section 507(a)(1) of the Code, shall be paid in full as finally allowed. Administrative expenses in the case are as follows:

- Counsel to the Debtor has been paid monthly subject to approval of Applications for Compensation. The sum of $10,000 - $15,000.00 is estimated by Debtor's counsel to be the amount of fees and expenses that will be due on Confirmation in addition to outstanding post-petition sums that have accrued to the date of this filing. Counsel to the Debtor may defer certain fees and expenses until after Confirmation.

- The administrative fees and expenses that are to be paid to TRG, the Financial Advisor retained by the Debtor have been approved in the sum of $58,029.20. TRG has been paid on account. It is anticipated that there will be further payments made during the period preceding Confirmation and there are additional sums anticipated for services to be rendered through Confirmation.

- The fees and expenses of Counsel to the Creditors Committee have been paid monthly subject to approval of Applications for Compensation. The additional fees and expenses to Counsel to the Creditor's Committee estimated to be due on Confirmation is anticipated to be in the approximate sum of $5,000.00 - $10,000.00.

- The fees and expenses for the Debtors Certified Public Accountant have been paid in the course of the proceedings subject to approval of Applications for Compensation. The additional fees and expenses that are estimated to be due upon Confirmation are in the approximate sum of $1,000.00.

The Debtor anticipates that each of the aforenoted professional fees and expenses will be approved upon Applications for Compensation. There were various fees paid to special counsel employed by the Debtor in the course of the proceedings. The Debtor anticipates that the professional fees to be sought by special counsel shall be less than $10,000.00 to the date of Confirmation. All fees and expenses shall be subject to the filing and approval of Applications for Compensation.

4



The Fees and Expenses paid to October 2004 in the course of the proceedings were:

|  | Billed | Paid | Estimated due on Confirmation |
|---|---|---|---|
| Parker & Associates | $141,471.25 | $134,713.18 | $10,000-$15,000 |
| R.A. Hall | $ 50,042.00 | $ 47,982.00 | $ 5,000 |
| Jager Smith | $ 54,897.26 | $ 53,463.66 | $10,000-$15,000 |
| TRG | $ 58,029.02 | $ 42,000.00 | $25,000-$40,000 |
| Total | $304,439.53 | $278,158.84 | $50,000-$70,000 |

There have been additional services rendered and additional payments made for the professionals employed in the proceeding. All bills for services rendered have been served upon interested parties as required by the Order approving Employment. In addition, Applications for Employment have been filed on a quarterly basis by the professionals and served upon all creditors. The administrative expenses of the Debtors' Chapter 11 case, allowed pursuant to Section 503(b) of the Code and given priority by virtue of Section 507(a)(l) of the Code, shall be paid in full upon Confirmation or as finally allowed or on the eleventh day after final allowance whichever is later or in accordance with any agreement between the Debtor and the professionals. There are no agreements at this time. The Debtor has estimated the sums which will be due on Confirmation. A creditor has objected to the range of fees which are estimates of amounts to be owed to the Administrative Claimants. In order to provide sufficient disclosure to enable the creditors to make an informed decision as required under the provisions of 11 U.S.C. § 1125(a), the Debtor will update the figures and supplement the estimates within five (5) business days preceding any hearing on Confirmation and will address the source of additional funds which may become due to pay all sums necessary to be paid upon the Effective Date.

## 2)   Fees of the United States Trustee

Administrative expenses shall include all quarterly fees owing to the U.S. Trustee through the filing of the Application for Final Decree. The Debtor is current upon its Quarterly Fee payments and the balance projected to be due upon Confirmation is $5,000.00, which shall be paid to the U.S. Trustee upon the Effective Date of Confirmation. Pursuant to the provisions of 28 U.S.C.§1930 as amended by Pub.L.No. 104-99 (1996) the Debtor shall provide the United States Trustee with Post-Confirmation monthly operating reports and make quarterly payments of the United States Trustee's fees until the case is closed. The Debtor will be responsible for timely payment of fees incurred pursuant to 28 U.S.C. §1930(a)(6). Upon the Effective Date the Debtor will file an Application for Final Decree or, the Debtor will serve the United States Trustee with a monthly financial report for each month (or portion thereof) the case remains open. The monthly financial report shall include the following:

1.    A statement of all disbursements made during the course of the month, whether or not pursuant to the plan;

2.    A summary, by class, of amounts distributed or property transferred to each recipient under the plan, and an explanation of the failure to make any distributions or transfers of property under the plan;

3.    Debtor's projections as to its continuing ability to comply with the terms of the plan;

4.    A description of any other factors which may materially affect the Debtor's ability to consummate the plan; and

5.    An estimated date when an application for final decree will be filed with the Court (in the case of the final monthly report, the date the decree was filed).

### 3)    Ordinary Course Business Obligations

Post-petition claims shall have been paid by the confirmation date except that ordinary operating expenses will continue to be paid in the ordinary course of business. The Debtor has paid all post-petition obligations in the ordinary course of business and there are no post-petition liabilities due.

### 4)    Priority Claims of Governmental Taxing Authorities

There are no claims owed to the Internal Revenue Service. There are claims owed in the approximate sums as set forth below to the following State and Local taxing authorities:

| | |
|---|---|
| Connecticut | $ 8,590.91 |
| Maine | $ 1,034.69 |
| Massachusetts | $15,916.87 |
| Mass. Fuel | $     19.84 |
| New Jersey | $ 7,423.64 |
| Pennsylvania | $43,507.81 |
| Rhode Island | $ 7,253.98 |
| Town of Wilmington | $ 2,886.48 |

The claims will be paid in full as set forth below in Article II by the Debtor who shall make payment on the claims of governmental taxing authorities as follows: the claims which are accorded priority treatment pursuant to Section 507(a)(8) of the Bankruptcy Code shall be paid in accordance with the provisions of the Bankruptcy Code, which provides that such claims may be paid over a period not exceeding six years from the date of assessment. These claims shall be paid in full in equal monthly installments commencing 30 days after the Effective Date over a period not exceeding six years after the date of assessment with interest on the outstanding balance as provided in Section 6621 of the Internal Revenue Code at the rate of Prime plus 2 ½% or in accordance with other applicable law. The monthly cash payment needed to satisfy the obligations is approximately $1,055.00 plus applicable interest.

The Debtor has filed all pre-petition and post-petition tax returns and is not liable on any post-petition tax liabilities except as are incurred in the ordinary course of business.

6

5)    **Priority Claims under Collective Bargaining Agreements**

There are priority claims owed pursuant to Collective Bargaining Agreements as follows:

a.    **11 U.S.C. § 507(a)(1)**

International Union of Operating Engineers Local 4 Benefits Fund (IUOE) asserts that its claims are priority claims under the provisions of 11 U.S.C. §§ 507(a)(1) in the sum of $11,127.15. The §507(a)(1) claim shall be paid on the Effective Date of Confirmation.

b.    **11 U.S.C. § 507(a)(4)**

1.  ⁻    International Union of Operating Engineers Local 4 Benefits Fund (IUOE) asserts that its claims are priority claims under the provisions of 11 U.S.C. §§ 507(a)(4) as well as § 1113(f) and that excluding the amounts sought as §507(a)(1) claims, the balance IUOE is owed is $113,352.49 plus interest to the petition date of $26,315.59 and may include additional contributions which are estimated not to exceed $15,668.20. Upon information and belief, the sums were ascertained as a result of an audit for the period of January through December 2003 and therefore a portion qualifies as §507(a)(4) claims entitled to priority.

2.    New England Teamster & Trucking asserts a claim of $1,608.84

3.    Northern New England Benefit Trust asserts a claim of $1,646.66.

The 11 U.S.C. § 507 (a)(4) claims will be paid in full by the Debtor who shall make an initial payment on the Effective Date of $6,000.00 upon the claims which arose under Collective Bargaining Agreements. Thereafter the claims shall be paid in equal monthly installments commencing 30 days after the Effective Date over 24 months from the Effective Date with interest at the rate of 6% per annum. The monthly payment is in the approximate sum of $6,000.00.

6)    **Classification of Claims**

a.    **Claimants secured by Equipment being transferred, surrendered or sold**

**Class One** consists of claims of Wells Fargo Equipment Finance, Inc. ("Wells Fargo") arising under a certain Master Lease No. 35848 dated December 2, 1999, as amended by Supplement to Master Lease No. 35848-100 dated December 2, 1999 (as amended, the "Lease") between the Debtor and Wells Fargo, pursuant to which Wells Fargo leased a certain Manitowoc Model 888 crane S/N 8881236 to the Debtor, which crane is known as Crane #36 in the Debtor's fleet of cranes. Wells Fargo's claims under the Lease have been addressed in full as set forth in

the *Motion to Approve Stipulation Rejecting Lease and Order Approving Same* (the "**Crane 36 Stipulation**"), which was filed on December 22, 2004. The Crane 36 Stipulation was allowed by Order of this Court entered on December 30, 2004, and the terms and conditions of the foregoing Order are specifically incorporated herein by reference.

To the extent that any of the terms and conditions of Crane 36 Stipulation and the Order entered in connection therewith are not satisfied, Wells Fargo specifically reserves all of its rights and remedies in connection with Wells Fargo's claims under the Lease, including, without limitation, the right to object to the Third Amended Disclosure Statement and Plan, any alternative treatment of Wells Fargo's claims under the Lease, and any other disclosure statements and/or plans of reorganization or amendments thereof filed by the Debtor.

**Class Two** consists of claims of Wells Fargo arising under, among other documents, instruments and agreements, (i) a certain Installment Promissory Note ("**Wells Fargo Note 1**") dated March 24, 1998 made by the Debtor payable to Wells Fargo in the original principal amount of $225,000.00; (ii) a certain Installment Promissory Note dated March 24, 1998 made by the Debtor payable to Wells Fargo in the original principal amount of $306,200.00 ("**Wells Fargo Note 2**"); and (iii) a certain Installment Promissory Note dated February 6, 2001 made by the Debtor payable to Wells Fargo in the original principal amount of $1,378,00.00.00 ("**Wells Fargo Note 3**"). The obligations of the Debtor to Wells Fargo under the Lease, Wells Fargo Note 1, Wells Fargo Note 2, and Wells Fargo Note 3 are secured by a security interest granted by the Debtor to Wells Fargo in and to the following: (i) a certain 1996 Grove Crane Model RT745, known as crane 29 in the Debtor's fleet ("**Crane 29**"), (ii) a certain 1990 Grove Crane Model TMS 700 B, known as Crane 31 in the Debtor's fleet ("**Crane 31**"), and (iii) a certain 2000 Manitowoc Crane Model 999, known as Crane 39 in the Debtor's fleet ("**Crane 39**").

## A.  Claims under Wells Fargo Note 2 and Wells Fargo Note 3

On January 10, 2004, the Debtor filed its *Motion To Approve Sale Of Certain Assets Free And Clear Of Liens And Encumbrances With Liens To Attach To The Proceeds And Stipulation In Connection With Motion To Sell and to Limit Notice and to Reduce the Time for Notice* (the "**Crane 29 and 39 Sale Motion**"), pursuant to which, among other things, the Debtor requested approval for the sale of Crane 29 and Crane 39 and which set forth the treatment of the Debtor's obligations under Wells Fargo Note 2 and Wells Fargo Note 3 arising from the deficiencies incurred as a result of the sale of Crane 29 and Crane 39. The Crane 29 and 39 Sale Motion was allowed by Order of this Court entered on January 11, 2005, and the terms and conditions of the foregoing Order are specifically incorporated herein by reference.

To the extent that any of the terms and conditions of Crane 29 and 39 Sale Motion and the Order entered in connection therewith are not satisfied, Wells Fargo specifically reserves all of its rights and remedies in connection with Wells Fargo's claims arising under Wells Fargo Note 2 and Wells Fargo Note 3, including, without limitation, the right to object to the Third Amended Disclosure Statement and Plan, any alternative treatment of Wells Fargo's claims under Wells Fargo Note 2 and Wells Fargo Note 3, and any other disclosure statements and/or plans of reorganization or amendments thereof filed by the Debtor.

## B. Claims under Wells Fargo Note 1

The Debtor shall actively market Crane 31 for an arm's length sale to a third party unrelated to the Debtor (the "**Crane 31 Sale**"). The Crane 31 Sale shall be consummated no later than forty-five (45) calendar days from the date of Confirmation. The Debtor shall be solely responsible for all aspects of, and costs associated with, the Crane 31 Sale, including, without limitation, marketing, advertising, scheduling and conducting the Crane 31 Sale. In connection with the Crane 31 Sale, the Debtor and Wells Fargo shall, in good faith, negotiate a release price for Crane 31 (the "**Crane 31 Release Price**"), but in no event shall Wells Fargo be obligated to accept a release price offered by the Debtor. Until the later to occur of (i) the consummation of the Crane 31 Sale, or (ii) forty-five (45) calendar days from the date of Confirmation, the Debtor shall continue to make monthly payments to Wells Fargo on the fifth day of each calendar month in the amount of $183.94. Provided that (i) Wells Fargo has received payment of the Crane 31 Release Price by no later than 45 days after the date of Confirmation, unless otherwise agreed upon by the parties, (ii) the Debtor and the guarantors of the Debtor's obligations to Wells Fargo (the "**Wells Fargo Guarantors**") have provided Wells Fargo with duly executed, written general releases in favor of Wells Fargo, in form and substance satisfactory to Wells Fargo in its sole and exclusive discretion, and (iii) if the Crane 31 Sale is consummated prior to Confirmation, upon approval by the Court of the Crane 31 Sale, then:

1. Wells Fargo will release the Debtor from any deficiencies arising under Wells Fargo Note 1 from the Crane 31 Sale;

2. The Debtor shall transfer title to Crane 31 to the buyer without any representations or warranties from Wells Fargo;

3. Wells Fargo shall terminate and/or discharge its liens encumbering Crane 31;

4. The Debtor shall deliver, at its sole cost and expense, possession of Crane 31 to the buyer; and

5. Wells Fargo shall release the Wells Fargo Guarantors from any deficiencies solely arising under Wells Fargo Note 1 from the Crane 31 Sale and shall take such reasonable steps as are necessary to reduce Wells Fargo's claims against Wells Fargo Guarantors as set forth in certain litigation pending in Essex Superior Court, Massachusetts, styled as Wells Fargo Equipment Finance, Inc. v. Ernest B. Baldwin, et al., Civil Action No. 03-02067D (the "**Wells Fargo State Court Litigation**") in order to reflect the foregoing release.

If the conditions set forth above in connection with the Crane 31 Sale are not satisfied as set forth herein, the Debtor shall (i) be in, and shall at the request of Wells Fargo acknowledge, default under its obligations under Wells Fargo Note 1, that certain Security Agreement dated March 24, 1998 by and between the Debtor and Wells Fargo, those two (2) certain Security Agreements each dated February 7, 2001 by and between the Debtor and Wells Fargo, and all other documents, instruments and agreements securing the Debtor's obligations to Wells Fargo, and (ii) within seven-two hours (72) hours of the 45th calendar day after Confirmation, deliver possession of Crane 31, in good working order, to Wells Fargo at such location as designated by Wells Fargo. Upon satisfaction of the foregoing conditions, Wells Fargo will release (i) the Debtor from any deficiencies arising under Wells Fargo Note 1 from the disposition of Crane 31,

and (ii) the Wells Fargo Guarantors from any deficiencies arising under Wells Fargo Note 1 from the disposition of Crane 31 and shall take such reasonable steps as are necessary to reduce Wells Fargo's claims against Wells Fargo Guarantors in the Wells Fargo State Court Litigation in order to reflect the foregoing release.

The Debtor acknowledges that all of the Debtor's obligations under the Lease, Wells Fargo Note 1, Wells Fargo Note 2, and Wells Fargo Note 3 are cross-collateralized and secured by Crane 31. Accordingly, notwithstanding the *in personam* release of the Debtor and the Guarantors of any obligations due under Lease (Class One, above) and Wells Fargo Note 2 and/or Wells Fargo Note 3, the release in connection with Wells Fargo Note 1 as contemplated above is not an *in rem* release of Crane 31, and in the event that the Crane 31 Release Price or the sales prices obtained by Wells Fargo from the disposition of Crane 31 by Wells Fargo is greater than the outstanding balance due under Wells Fargo Note 1, Wells Fargo shall be entitled to receive the full amount of the Crane 31 Release Price or the sale price obtained by Wells Fargo from the disposition of Crane 31, as applicable.

Wells Fargo has agreed to take no further action in connection with the Wells Fargo State Court Litigation until the Note Amendment Effective Date, provided that the Wells Fargo Guarantors also take no action. However, nothing contained herein shall be deemed to prohibit Wells Fargo from taking such action as may be deemed necessary and appropriate to conform the standstill agreement with the Wells Fargo State Court Litigation tracking order or any other order entered in connection with the Wells Fargo State Court Litigation.
The Class Two Claimant consents to these terms and conditions.

**Class Three** consists of the obligation to All Points Capital Corporation secured by a Link- Belt Model HTT-8650XXLB Hydraulic Crane serial number F2J2-6146. The Crane was known as Crane #54 of the Baldwin fleet. The obligation has been addressed as fully set forth in the Order entered on December 14, 2004 the terms of which are incorporated here by reference. The Class Three Claimant is unimpaired.

**Class Four** consists of the claims of General Electric Capital Corporation ("GE Capital") holder of the claim pursuant to a Collateral Assignment of Chattel Mortgage by Winfield Corporation. The obligation is secured by the crane known as Crane # 41 in the Baldwin fleet, a 150 Ton Link- Belt, Model Number HC238HII entered on or about December 8, 2000 which had an outstanding balance due of $824,461.61 before application of the adequate protection payments. The obligation to GE Capital has been addressed as fully set forth in the Order entered on December 14, 2004, the terms of which are incorporated here by reference. The Class Four Claimant is unimpaired.

**Class Five** consists of the claim of CitiCapital Commercial Corporation, assignee of debis Financial, Inc., ("CitiCapital "), is the holder of a Note as evidenced by the information contained in the Proof of Claim, and defined as Account No. 121-0080882-000. The obligation secured by a 1996 Manitowoc 230 Ton Crawler crane, Serial Number 888-1083, known as Crane #30 of the Baldwin fleet, had a balance due on the filing date of $994,900.90. After

application of Adequate Protection payments paid for a period of thirteen months in amounts totaling $69,761.64, there is a remaining balance of $925,139.26 as of January 2005.

In satisfaction of the claim described herein secured by Crane No. 30 CitiCapital has agreed to "accept Crane # 30 in consideration for amounts due under the note secured by Crane No. 30, subject to conditions which include (i) turnover of Crane No. 30 is subject to CitiCapital's inspection and review of such crane after the entry of an order authorizing the Crane's turnover, (ii) CitiCapital's right to put Crane No. 30 back to the Debtor if, upon inspection of the crane, in CitiCapital's opinion such crane has experienced extraordinary wear and tear since CitiCapital's last inspection, and (iii) CitiCapital's right to assert its entire deficiency claim under the note secured by Crane No. 30 if the Debtors proposed [Third] Amneded Plan of Reorganization is not confirmed." See Objection of CitiCapital Commercial Corporation and CitiCapital Technical Finance Inc. to the Debtor's SecondAmended Disclosure Statement.

It should be noted that CitiCapital has rejected an offer for the purchase of Crane No. 30 for $700,000.00 with an additional $150,000.00 for the Luffing Jib attachment to Crane No. 30. Accordingly, in the event that the Debtor fails to obtain Confirmation and there were to be a liquidation, CitiCapital's deficiency upon the Note known as account 121-0080882-000 should be limited to not more than $75,139.26 less any further adequate protection payments paid after January 2005. Upon return of the Crane, the Class Five creditor shall be deemed satisfied in full and shall assert no further claim, either secured or unsecured against the estate upon Confirmation of the Plan. The Class Five Creditor is unimpaired.

**Class Six** consists of the claims of General Electric Capital Corporation ("GE Capital") holder of the claim pursuant to a Collateral Assignment of Chattel Mortgage by Winfield Corporation. The obligation was incurred on or about September 18, 1997 in the original principal amount of $271,845 and was secured by a 45 ton Grove, Model Number RT745 known as Crane #27 in the Baldwin fleet. The Obligation to GE Capital has been addressed as fully set forth in the Order entered on December 14, 2004, the terms of which are incorporated here by reference. The Class Six Claimant is unimpaired.

**Class Seven** consists of the claim of De Lage Landen Financial Services ("DLL"), the holder of a Note as evidenced by the information contained in the Proof of Claim. The obligation is known as Account No. 24378167000001 secured by a 275 Ton Lift crane, a 2000 Manitowoc, Serial Number 999-1027and known as Crane #43 in the Baldwin fleet; and, an obligation which is known as Account No. 24378167000002, secured by a 2000 Manitowoc MAX-ER attachment, Serial Number 225-3113 and known as Crane #44 in the Baldwin fleet.

At the time of the filing, the Proof of Claim provided that the outstanding sum was in the amount of $2,103,230. The sum owed after application of adequate protection payments is $1,959,750.56. The Obligation to DLL has been addressed as fully set forth in the Motion to Approve Stipulation and Agreed Order filed on January 24, 2005 the terms of which are incorporated here by reference. The Cranes 43 and 44 shall be returned to DLL and DLL shall

11

have no further claim against the Debtor or the Estate of the Debtor. The Class Seven Claimant is unimpaired.

b.    **Claimants secured by Equipment being retained by Debtor**

**Class Eight** consists of the claim of Chase Manhattan Automotive Finance Corps. ("Chase") which holds a Note secured by an interest in a 2001 Mercedes motor vehicle. At the time of the filing of the Petition, the Claimant was owed the sum of $35,896.00 and the vehicle had a fair market value of $42,645. The Debtor has made all post-petition payments on the obligation. The Note provides for monthly payments in the sum of $1,215.38.

Upon the Effective Date, the Debtor shall cure the pre-petition and post-petition arrears in the sum of $3,646.14. Upon Confirmation of the Debtor's Plan, all obligations hereunder to Chase shall be deemed to have been reinstated pursuant to the terms of the Plan, as if no default in payment or otherwise had ever occurred. The Debtor shall continue to make the payments set forth under the Note and shall satisfy the claim in full. The Claimant shall retain such security as existed on Petition date The Class Eight Claimant is unimpaired.

**Class Nine** consists of the claim of Citizen's Bank which had a Note secured by a 1999 Chevrolet Suburban motor vehicle. At the time of the filing of the Petition, the Claimant was owed the sum of $3,820.67 and the vehicle had a fair market value of $10,620.00. The Debtor made all post-petition payments on the obligation and the obligation has been satisfied in full. The Class Nine Claimant is unimpaired.

**Class Ten** consists of the claim of General Motors Acceptance Corporation which holds a Note secured by an interest in a 2003 Chevrolet Silverado motor vehicle. At the time of the filing of the Petition, the Claimant was owed the sum of $33,123.50 and the vehicle had a fair market value of $24,460.00. The Note provides for monthly payments in the sum of $560.00. Thirty days following the Effective Date, the Debtor shall cure the pre-petition arrears in the sum of $1,682.82. Upon Confirmation of the Debtor's Plan, all obligations hereunder to General Motors Acceptance Corporation shall be deemed to have been reinstated pursuant to the terms of the Plan, as if no default in payment or otherwise had ever occurred. The Claimant shall retain such security as existed on Petition date The Debtor shall continue to make the payments set forth under the Note and shall satisfy the claim in full. The Class Ten Claimant is unimpaired.

**Class Eleven** consists of the claim of Caterpillar Financial Services Corporation ("Caterpillar"). Caterpillar is the holder of one (1) Security Agreement and Promissory Note dated as of January 22, 2003 ("Caterpillar Note") secured by a UCC-1 on a 2001 Caterpillar Backhoe 416 D (equip # BH40) serial number BFP466. At the time of the filing, Caterpillar was owed the sum of $27,479.07. The Class Eleven claimant shall be paid the amount due under the Caterpillar Note as of Filing Date after application of the Adequate Protection Payments paid during the proceeding. The Adequate Protection payments shall be applied to the balance owed on the Filing Date. The Plan provides that Caterpillar shall retain such security as existed on Filing Date. The Debtor shall cure any post-petition arrears upon the Effective Date and

thereafter shall make monthly payments in the sum of $612.47 in accordance with the terms of the Caterpillar Note. Any sums that were owed pre-petition shall be added to the term of the Caterpillar Note. The current expiration of the term is January 22, 2008. Upon Confirmation of the Debtor's Plan, all obligations hereunder to Caterpillar shall be deemed to have been reinstated pursuant to the terms of the Caterpillar Note, as if no default in payment or otherwise had ever occurred.

The Class Eleven Claimant shall retain a lien upon the collateral to the same extent as that held on the Filing Date. The Class Eleven Claimant is impaired.

**Class Twelve** consists of the claim of Sovereign Bank f/k/a First Essex Bank (hereinafter "Sovereign" or the "Class Twelve Claimant") pursuant to a Promissory Note dated July 14, 1995 in the original stated amount of $250,000.00, as amended by a Change in Terms Agreement dated July 8, 2002, which increased the stated amount of the Promissory Note to $750,000.00 (the "LOC Promissory Note"). Sovereign asserts and the Debtor does not dispute that the LOC Promissory Note is fully secured by pre-petition liens and Sovereign holds an all asset security interest in the Debtor's assets. Upon Confirmation, Sovereign shall retain all of its pre-petition liens and security interests securing the LOC Promissory Note until the indebtedness owed thereunder is paid in full and all of Sovereign's rights under applicable non-bankruptcy law, that existed immediately prior to the commencement of Debtor's bankruptcy case, shall remain unaltered and unchanged unless specifically altered or changed by the Plan.

The following loan agreements signed by the Debtor and/or William E. Baldwin, Sr. and Ernest B. Baldwin, Sr. as Guarantors in connection with the LOC Promissory Note shall remain in full force and effect post-confirmation in accordance with their terms, except to the extent that their terms are expressly modified by this Plan. All default and cure provisions will be as previously contained in the loan documents existing at the time of the filing.

- Account no. 80168: Promissory Note signed by the Debtor, in the stated amount of 250,000, dated 7/14/95;

- Commercial Guaranty of William E. Baldwin, Sr. dated 7/14/95;

- Commercial Guaranty of Ernest B. Baldwin, Sr. dated 7/14/95;

- Commercial Security Agreement signed by the Debtor dated 7/14/95;

- Business Loan Agreement signed by the Debtor dated 7/14/95; and

- Change in Terms Agreement dated July 8, 2002, (increasing stated amount to $750,000.00)

The balance due under the LOC Promissory Note for principal, interest and late charges as of 9/14/04 was $738,935.93 plus outstanding legal expenses to date and appraisal costs (or to be determined). The Debtor reserves the right to amend or dispute the amounts contained herein

13

as owed to the Claimant as all sums remain subject to review and final determination pending discussions and analysis between the Claimant and the Debtor. In the event that the parties cannot resolve the amount of the claim, both the Debtor and the Claimant shall have the right to submit evidence as to the correct amount of the claim to be determined in proceedings before this Court. The amounts to be paid under the Plan assume payment of twelve adequate protection payments to the Confirmation date.

Although there has been no determination in this Plan as to the validity of Sovereign's pre-petition liens and security interests securing the Class Twelve Claim, nothing in this Plan or the order confirming the Plan shall prejudice, affect or impair the validity, perfection or priority of Sovereign's pre-petition liens and security interests including, without limitation, the priority of Sovereign's pre-petition liens and security interests in property described as collateral of other creditors in any other Class of the Plan. The Debtor acknowledges that Sovereign asserts first priority liens and security interests in property described as collateral of other creditors elsewhere in the Plan and Sovereign shall retain post-Confirmation, all of its rights and remedies under the above-described loan agreements with respect to such property and any other Collateral as described therein.

The principal amount of the LOC Promissory Note on the Confirmation date shall be equal to the balance due thereunder, as of September 14, 2004, as set forth above, plus such additional amounts of interest and other charges as may thereafter accrue under the LOC Promissory Note, plus a proportionate share of Sovereign's reasonable attorneys fees and expenses incurred in the enforcement of its rights in this Chapter 11 case, less adequate protection payments made to Sovereign prior to the Effective date.

The provisions of the LOC Promissory Note entitled "Promise to Pay", "Payment" and "Variable Interest Rate" shall be deemed modified to provide for payment, from and after the Confirmation date, as follows:

Baldwin Crane and Equipment Corp. ("Borrower") promises to pay Sovereign Bank ("Lender"), or order, the principal sum of $738,935.93 plus outstanding legal expenses to date and appraisal costs (or to be determined as set forth above) together with interest on said unpaid principal amount from time to time outstanding prior to maturity at a floating per annum rate equal to the Prime Rate plus one and one-half (1.5%) percent. Such principal amount shall be paid in full, over a six year term, in seventy-two equal monthly installments of $10,000.00 plus interest, beginning on the first day of the first full month following the date of Confirmation and continuing on the first day of each month thereafter except for the final (seventy-second) installment which shall be in the amount of the entire remaining principal balance and all accrued interest and any other charges then owed hereunder. "Prime Rate" means a rate per annum equal to the rate of interest announced from time to time by Lender at its principal banking office as its Prime Rate, which rate shall change as and when such announced rate changes. Interest shall be calculated on the basis of a 360-day year. In no event shall interest payable hereunder exceed the highest rate permitted by applicable law. The "date of Confirmation" as used herein shall mean the date of the entry of an order confirming the Borrower's Third Amended Plan of Reorganization in Chapter 11 Case No.03-18303 pending in the United States Bankruptcy Court

for the District of Massachusetts. Borrower shall make payments hereunder to Lender at the following address Lee Lapierre, Sovereign Bank, Managed Asset Division, 1010 Farmington Avenue, West Hartford, CT 06107, Mail Cod: CT1-FRM-01-01.. All payments will be applied first to any charges, costs, expenses or late fees outstanding, then to unpaid accrued interest, and any balance to principal.

Upon Confirmation, the LOC Promissory Note shall be deemed to have been reinstated pursuant to the above terms, as if no default in payment or otherwise had ever occurred. Sovereign's loan agreements with the Debtor shall be further modified as provided hereunder.

Sovereign is the holder of Commercial Guarantees of William E. Baldwin, Sr. and Ernest B. Baldwin, Sr., the pre-petition shareholders of the Debtor. Sovereign will forbear from enforcing its rights and remedies under said Commercial Guarantees so long as there occurs no event of Default under the LOC Promissory Note as reinstated by this Plan. William E. Baldwin, Sr. and Ernest B. Baldwin, Sr. shall confirm in writing to Sovereign the continuing post-Confirmation validity and enforceability of said Commercial Guarantees pursuant to which they have guaranteed payment to Sovereign of the entire Class Twelve Claim. William E. Baldwin, Sr. and Earnest B. Baldwin, Sr., Guarantors of Baldwin's indebtedness to Sovereign, shall provide updated personal financial statements and subsequent years federal and state personal income tax returns upon request by Sovereign. The Class Twelve Claimant is impaired under the Plan.

**Class Thirteen** consists of the claims of Sovereign Bank f/k/a First Essex Bank (hereinafter "Sovereign" or the "Class Thirteen Claimant") pursuant to five Promissory Notes described below. Sovereign asserts and the Debtor does not dispute that each of said Promissory Notes is fully secured by pre-petition liens and Sovereign holds an all asset security interest in the Debtor's assets. Upon Confirmation, Sovereign shall retain all of its pre-petition liens and security interests securing said Promissory Notes until the indebtedness owed thereunder is paid in full. The following loan agreements signed by the Debtor and/or William E. Baldwin, Sr. and Ernest B. Baldwin, Sr. as Guarantors in connection with said Promissory Notes shall remain in full force and effect post-confirmation in accordance with their terms, except to the extent that their terms are expressly modified by this Plan:

- Account No. 0060909: Promissory Note signed by the Debtor in the stated amount of $325,000 dated 7/30/99; and

- Commercial Security Agreement signed by the Debtor dated 7/30/99. The security interest includes the crane known as Crane 33 of the Baldwin fleet.

The balance due under the foregoing Promissory Note for principal, interest and late charges as of 9/14/04 was $191,835.68.

- Account No. 0060928 Promissory Note signed by the Debtor in the stated amount of $260,000 dated 9/3/99; and

15

- Commercial Security Agreement signed by the Debtor dated 9/3/99. The security interest includes the crane known as Crane 34 of the Baldwin fleet.

The balance due under the foregoing Promissory Note for principal, interest and late charges as of 9/14/04 was $160,497.56.

- Account No. 0061098 Promissory Note signed by the Debtor in the stated amount of $135,000 dated 8/17/00; and

- Commercial Security Agreement signed by the Debtor dated 8/17/00. (Misc. Note)

The balance due under the foregoing Promissory Note for principal, interest and late charges as of 9/14/04 was $61,979.50.

- Account No. 0061138 Promissory Note signed by the Debtor in the stated amount of $1,378,000 dated 2/9/01;

- Commercial Guaranty of William E. Baldwin, Sr. dated 2/9/01;

- Commercial Security Agreement signed by the Debtor dated 2/9/01; and

- Business Loan Agreement signed by the Debtor dated 2/9/01. The security interest includes the crane known as Crane 42 of the Baldwin fleet.

The balance due under the foregoing Promissory Note for principal, interest and late charges as of 9/14/04 was $1,213,886.28.

- Account No. 0061365(crane 53) Promissory Note signed by the Debtor in the stated amount of $1,300,000 dated 7/8/02;

- Commercial Guaranty of William E. Baldwin, Sr. dated 7/8/02;

- Commercial Guaranty of Ernest B. Baldwin, Sr. dated 7/8/02;

- Commercial Security Agreement signed by the Debtor dated 7/8/02; and

- Business Loan Agreement signed by the Debtor dated 7/8/02. The security interest includes the crane known as Crane 53 of the Baldwin fleet.

The balance due under the foregoing Promissory Note for principal, interest and late charges as of 9/14/04 was $1,240,779.59.

- Miscellaneous: Commercial Guaranty (unlimited) signed by the Debtor of the indebtedness of William E. Baldwin, Sr. and Ernest B. Baldwin, Sr. dated 5/31/02.

16

Although there has been no determination in this Plan as to the validity of Sovereign's pre-petition liens and security interests securing the Class Thirteen Claims, nothing in this Plan or the order confirming the Plan shall prejudice, affect or impair the validity, perfection or priority of Sovereign's pre-petition liens and security interests including, without limitation, the priority of Sovereign's pre-petition liens and security interests in property described as collateral of other creditors in any other Class of the Plan. The Debtor acknowledges that Sovereign asserts first priority liens and security interests in property described as collateral of other creditors elsewhere in the Plan and Sovereign shall retain post-Confirmation, all of its rights and remedies under the above-described loan agreements with respect to such property and any other Collateral as described therein unless specifically altered or changed by the Plan. Sovereign shall have all rights reserved to assert and enforce a first lien and security interest in any asset during the case or post-confirmation regardless of definitions of crane security interests under the Plan. Sovereign shall retain the right to challenge the valuations described in exhibits A and D through Confirmation.

The principal amount of each of the forgoing Promissory Notes on the Confirmation date shall be the balance due thereunder, as of September 14, 2004, as set forth above, plus such additional amounts of interest and other charges as may accrue thereafter under each such Promissory Note, plus a proportionate share of Sovereign's reasonable attorneys fees and expenses incurred in the enforcement of its rights under said Promissory Notes, less adequate protection payments made to Sovereign prior to the Confirmation date. The Debtor reserves the right to amend or dispute the amounts contained herein as owed to the Claimant as all sums remain subject to review and final determination pending discussions and analysis between the Claimant and the Debtor. In the event that the parties cannot resolve the amount of the claim, both the Debtor and the Claimant shall have the right to submit evidence as to the correct amount of the claim to be determined in proceedings before this Court. The amounts disclosed as to be paid under the Plan assume payment of twelve adequate protection payments to the Confirmation date. Adequate Protection Payments shall continue to the Effective Date.

Sovereign shall retain the right to assert amounts owed which are different than those amounts disclosed in the Disclosure Statement and Plan as well as the right to assert other objections if there is a material change in circumstance regarding the collateral, and to reserve all rights and remedies under their loan agreements and other applicable laws, except to the extent that the terms of the Plan are in conflict with the loan documents, whereupon the confirmed Plan language will control the actions of the parties.

The provisions of each of the five Promissory Notes described above entitled "Promise to Pay", "Payment" and, where applicable, "Variable Interest Rate" shall be deemed modified to provide for payments as follows:

Baldwin Crane and Equipment Corp. ("Borrower") promises to pay Sovereign Bank ("Lender"), or order, the principal sum of $2,870,271.00 (or to be determined as set forth above) together with interest on said unpaid principal amount from time to time outstanding prior to maturity at a fixed rate equal to six percent per annum. Sovereign agrees to a fixed interest rate

17

unless other creditors receive a floating rate at which time Sovereign seeks to be paid the same interest rate and term treatment.

Such principal amount shall be paid in full, over a seven year term, but on a twelve year amortization schedule, and shall be payable in eighty-four equal monthly installments of $28,020.00 (as determined above), beginning on the first day of the first full month following the date of Confirmation and continuing on the first day of each month thereafter except for the final (eighty-fourth) installment which shall be in the amount of the entire remaining principal balance of $1,428,030.00 and all accrued interest and any other charges then due hereunder. The "date of Confirmation" as used herein shall mean the date of the entry of an order confirming the Borrower's Third Amended Plan of Reorganization in Chapter 11 Case No.03-18303 pending in the United States Bankruptcy Court for the District of Massachusetts. Borrower shall make payments to Lender at the following address: Lee Lapierre, Sovereign Bank, Managed Asset Division, 1010 Farmington Avenue, West Hartford, CT 06107, Mail Cod: CT1-FRM-01-01.All payments will be applied first to any charges, costs, expenses or late fees outstanding, then to unpaid accrued interest, and any balance to principal.

Upon Confirmation, all of the Promissory Notes described in this Class Thirteen shall be deemed to have been reinstated pursuant to the above terms, as if no default in payment or otherwise had ever occurred. Sovereign's existing loan agreements with the Debtor shall be further modified as provided in Section B, Covenants of the Debtor.

As indicated above, Sovereign is the holder of Commercial Guarantees of William E. Baldwin, Sr. and Ernest B. Baldwin, Sr., the pre-petition shareholders of the Debtor. Sovereign will forbear from enforcing its rights and remedies under said Commercial Guarantees so long as there occurs no event of Default under the Promissory Notes described in this Class Thirteen as reinstated by this Plan.

William E. Baldwin, Sr. and Ernest B. Baldwin, Sr. shall confirm in writing to Sovereign the continuing post-confirmation validity of said Commercial Guarantees pursuant to which they have guaranteed payment to Sovereign of all of the Class Thirteen Claims. William E. Baldwin, Sr. and Earnest B. Baldwin, Sr., Guarantors of Baldwin's indebtedness to Sovereign, shall provide updated personal financial statements and subsequent years federal and state personal income tax returns upon request by Sovereign.

Provisions entitled "Line of Credit", "Line of Credit Covenants", "Conditions Precedent to Each Advance", "Cessation of Advances", "Line of Credit Review Period", "Loan to Values" and "Advance Rates" under Sovereign's existing loan agreements which provisions contemplate further borrowing and additional financial covenants shall be deleted. The indebtedness to Sovereign under a Promissory Note dated July 14, 1995, shall be converted from being payable on demand to a term loan payable in full in seventy-two monthly installments of principal and interest beginning on the first day of the first full month following the Confirmation date of Baldwin's Plan. No further advances shall be made by Sovereign to Baldwin under any existing Promissory Note. The Class Thirteen Claimant is impaired under the Plan.

c.    **Claims of CitiCapital Commercial Corporation, as assignee of debis Financial, Inc.**

This section consists of the claims held by CitiCapital Commercial Corporation, as assignee of debis Financial, Inc. (hereinafter "CitiCapital") a creditor holding obligations as described below. There has been no determination as to the validity of the security interests of CitiCapital under the Plan. The failure to address same hereunder is not a waiver of any subsequent challenges which may be brought.

The proposed payments to CitiCapital Commercial Corporation, as assignee of debis Financial, Inc. are based upon the information contained in the Proofs of Claim filed in the proceeding less adequate protection payments made to CitiCapital prior to the Confirmation date. The Debtor reserves the right to amend or dispute the amounts contained herein as owed to CitiCapital Commercial Corporation, as assignee of debis Financial, Inc. as all sums remain subject to review and final determination pending discussions and analysis between CitiCapital Commercial Corporation, as assignee of debis Financial, Inc. and the Debtor as well as potential litigation concerning the validity of security interests. In the event that the parties cannot resolve the amount or the security for the claim, both the Debtor and CitiCapital Commercial Corporation, as assignee of debis Financial, Inc. shall have the right to submit evidence as to the correct amount of the claim and the security agreements for a determination in these proceedings, before this Court. The Debtor does not contemplate a dispute as to amounts of the claim.

The amounts to be paid under the Plan assume a continuous monthly payment of adequate protection to the Effective Date. It is intended that payments be made monthly through Confirmation and the Effective Date. To the extent there is a gap in time between Confirmation and the Effective Date, the Debtor shall make its monthly adequate protection payment until the 5th day of the month following the payment of the final Adequate Protection which occurred before the last day on which an appeal from an order of the Court confirming the Debtor's Plan of Reorganization may be taken under applicable law and no such appeal has been taken or, if any appeal has been taken, the first business day following the 5th day of the month after all appeals have been exhausted and the Plan may be put into effect, whichever is later. Payment of Adequate Protection shall not be suspended during the appeal period.

The Plan proposes to pay CitiCapital Commercial Corporation, as assignee of debis Financial, Inc. whose claims are treated in Classes Thirteen through Eighteen the sums owed on the balance due on the filing date after application of the adequate protection payments to the sums due on the filing date. The obligation shall be paid in monthly installments over a term of 12 years with interest fixed at six (6%) per annum. The pre-petition promissory notes, loan agreements and security agreements evidencing the Loans will remain in force and effect post-confirmation in accordance with their terms, except to the extent that the terms of payment of the indebtedness are expressly modified by the Plan.

All of CitiCapital's rights under applicable non-bankruptcy law, that existed immediately prior to the commencement of Debtor's bankruptcy case, shall remain unaltered and unchanged unless specifically altered or changed by the Plan. So long as the Debtor is not in default under the payments required under the loan documents or the Plan, except to the extent there is an inconsistency between the Plan provisions and the loan documents where the Plan shall control, the Debtor shall not be in default of its obligations to this creditor. Any other rights or remedies are set forth in the sections entitled <u>Covenants of the Debtor</u> and <u>Events of Default</u> and that are detailed in Sections B and C below.

Upon Confirmation of the Debtor's Plan, all obligations to CitiCapital Commercial Corporation, as assignee of debis Financial, Inc. shall be deemed to have been reinstated pursuant to the terms of the Plan, as if no default in payment or otherwise had ever occurred.

The amounts disclosed reflect payment of thirteen adequate protection payments. Additional payments will be made to the Effective Date and all payments shall be applied to the amounts due upon the filing date of the Chapter 11.

**Class Fourteen** consists of the claim of CitiCapital Commercial Corporation, as assignee of debis Financial, Inc., holder of a Note as evidenced by the information defined in the Proof of Claim (less adequate protection payments made to CitiCapital prior to the Confirmation date)filed by CitiCapital as Account No. 121-0080895-000. The obligation secured by a 1998 Manitowoc, 300 Ton Crawler crane, serial number 225-1033 known as Crane #32 of the Baldwin fleet, had a balance due on the filing date of $1,758,724.82.

The Debtor has paid Adequate Protection in the sum of $8,976.59 for 13 months through January 2005 upon the Loan obligation referred to and purportedly secured by Crane 32 for a total of $116,695.67. The remaining balance of approximately $1,642,029.15 less adequate protection payments made to CitCapital prior to the Effective Date shall be paid by monthly installment payments payable over a term of 12 years at interest fixed at 6% per annum. The payments in years 1 and 2 shall be in the monthly sum of $14,147.00 and shall increase in years 3-12 to $16,670.00.

Upon Confirmation of the Debtor's Plan, all obligations hereunder to the Class Fourteen Claimant shall be deemed to have been reinstated pursuant to the terms of the Plan, as if no default in payment or otherwise had ever occurred. The Class Fourteen Claimant is impaired.

**Class Fifteen** consists of the claim of CitiCapital Commercial Corporation, as assignee of debis Financial, Inc., holder of a Note as evidenced by the information contained in the Proof of Claim (less adequate protection payments made to CitiCapital prior to the Effective Date) and defined as Account No. 121-0080911-000, which sums are purportedly secured by a 2000 Manitowoc 300 Ton Crawler crane, serial number 225-1073 known as Crane #37 of the Baldwin fleet. The security interest for the obligation purports to arise from an subordination agreement entered with First Essex Bank, now known as Sovereign Bank and CitiCapital. In connection with the Opposition filed by Sovereign to the Motion of CitiCapital seeking relief from the automatic stay, Sovereign disputes that CitiCapital is entitled to the benefits of any

20

subordination agreement and further is not the holder of even a junior perfected purchase money security interest as Crane 37 is an untitled crane and CitiCapital has not filed a UCC-1 financing statement describing Crane 37. The obligation had a balance due on the filing date of $1,628,231.43. The Debtor has paid the Class Fifteen claimant the sum of $9,681.08 for 13 months through January 2005 as adequate protection for the obligation referred to and purportedly secured by Crane 37 for a total of $125,854.04. If there is a determination that CitiCapital is the perfected lien holder, then the Adequate Protection payments shall be applied to the balance owed on the Petition Date. The remaining balance of approximately $1,512,058.47 less Adequate Protection payments made to CitiCapital prior to the Effective Date shall be paid by monthly installments payable over a term of 12 years at interest fixed at 6% per annum. The payments in years 1 and 2 shall be in the monthly sum of $12,957.00 and shall increase in years 3-12 to $15,263.00. If there is a determination that the Class Fifteen claimant is the holder of an unsecured claim, then, the obligation known as CitiCapital Note 121-0080911-000 shall be treated in accordance with the claimants holding general unsecured claims as more fully set forth in Class Twenty-Two below and CitiCapital shall turnover the sums paid for adequate protection by the Debtor to be used for distribution to the creditors holding general unsecured claims. The Class Fifteen Claimant is impaired.

**Class Sixteen** consists of the claim of CitiCapital Commercial Corporation, as assignee of debis Financial, Inc., holder of a Note as evidenced by the information contained in the Proof of Claim (less adequate protection payments made to CitiCapital prior to the Confirmation date) and defined as Account No. 121-0080928-000. The obligation secured by a 2000 Link-Belt HTC-8650 XXLB 50 Ton Hydraulic Truck Crane, Serial Number F2JO-4247 is known as Crane #38 of the Baldwin fleet and had a balance due on the filing date of $297,112.36. The Debtor has paid the sum of $1,571.38 for 13 months through January 2005 upon the obligation known as and secured by Crane 38 for a total of $20,427.94. The remaining balance of $257,827.86, less adequate protection payments made to CitiCapital prior to the Effective Date, shall be paid by monthly installment payments payable over a term of 12 years at interest fixed at 6% per annum. The payments in years 1 and 2 shall be in the monthly sum of $2,384.00 and shall increase in years 3-12 to $2,809.00.

Upon Confirmation of the Debtor's Plan, all obligations hereunder to the Class Sixteen Claimant shall be deemed to have been reinstated pursuant to the terms of the Plan, as if no default in payment or otherwise had ever occurred. The Class Sixteen Claimant is impaired.

**Class Seventeen** consists of the claim of CitiCapital Commercial Corporation, as assignee of debis Financial, Inc., holder of a Note which obligation is known as Account No. 121-0080865-000. CitiCapital is owed the sum of $928,002.00 (less adequate protection payments made to CitiCapital prior to the Confirmation date). The obligation evidenced by a Promissory Note and security agreement is secured by a 230 Ton Crawler crane, a 1996 Manitowoc with luffing jib, Serial Number 888-1062. The Crane is known as Crane # 28 in the Baldwin fleet. After application of adequate protection payment of $5,322.39 for 13 months upon the Loan obligation secured by Crane 28 for a total of $69,191.07, the claim is outstanding in the sum of $922,680.19 as of January 2005. Adequate protection payments shall continue to be paid until the Effective Date.

CitiCapital has rejected the turnover of Crane No. 28 in full satisfaction of the obligation known as Account No. 121-0080865-000, alleging that the obligation is also secured by Crane No. 21. CitiCapital has asserted that it may be the holder of a security interest in Crane 21. The Debtor believes that Sovereign Bank, f/k/a First Essex Bank, the holder of the Title to Crane No. 21 is the secured creditor. It may be necessary for a determination upon the validity of the security interest in Crane No. 21.

CitiCapital shall be paid, less adequate protection payments made to CitiCapital prior to the Confirmation date, the remaining balance by monthly installments payable over a term of 12 years at interest fixed at 6% per annum. The payments in years 1 and 2 shall be in the monthly sum of $7,973.00 and shall increase in years 3-12 to $9,393.00. The Class Seventeen claimant is impaired.

**Class Eighteen** consists of the claim of CitiCapital Technology Finance, Inc., as Successor in Interest to American Equipment Leasing ("Citi/AEL"). Citi/AEL is the holder of a Note which was entered between Baldwin and American Equipment Leasing. Citi/AEL is also the holder of personal guarantees for satisfaction of the obligation. Pursuant to the information contained in the Proof of Claim, the unpaid balance of the obligation as of the filing date was $649,773.18. The obligation is secured by a 2000 Grove 5120B, 120 Ton Hydraulic Crane, Serial Number 5100-9058, known as Crane #40 in the Baldwin fleet. The Debtor has paid the sum of $3,492.07 for 13 months upon the obligation known as and secured by Crane 40 for a total of $45,396.91 through January 2005. The remaining balance of approximately $604,376.274, less adequate protection payments made to Citi/AEL prior to the Effective Date shall be paid by monthly installment payments payable over a term of 12 years at interest fixed at 6% per annum. The payments in years 1 and 2 shall be in the monthly sum of $5,209.00 and shall increase in years 3-12 to $6,136.00. Upon Confirmation of the Debtor's Plan, all obligations hereunder to Citi/AEL shall be deemed to have been reinstated pursuant to the terms of the Plan, as if no default in payment or otherwise had ever occurred. The Class Eighteen Claimant shall be paid the full amount of their claim owed on the Petition date.

Citi/AEL has objected to the prior Disclosure Statements because it does not specifically state in the treatment provisions pertaining to Citi/AEL that the reinstatement is intended to create a defense for all personal guarantors with pending actions against them by Citi/AEL. The treatment provisions are only intended in part to create defense as suggested by the Citi/AEL. The Debtor seeks also to insure that Citi/AEL does not attempt to enforce any defaults which occurred pre-petition but which have not been specifically addressed by the Plan of Reorganization. Upon Confirmation, the Debtor shall record a copy of the Final Order confirming the Plan of Reorganization and the Guarantors shall seek to suspend the state court action which has been commenced against the guarantors in consideration of the contribution of new value by the guarantors and the voluntary reduction of the weekly salary payments. The Debtor shall continue to make the payments set forth under the Plan and shall satisfy the claim in full. The Class Eighteen Claimant is impaired.

### d.    De Lage Landen Financial Services

This section consists of the claim held by De Lage Landen Financial Services, ("DLL") a creditor holding obligations secured by the cranes set forth below. There has been no determination as to the validity of the security interests of the Claimants under the Plan. The Debtor has addressed each of the obligations separately.  DLL has objected to the treatment of the DLL claims alleging "the loan documents contain cross-default provisions that secure DLL's claim with all of the equipment financed by DLL for the Debtors use in its ongoing business operations." No determination as to the validity of those provisions has been conducted nor will such an analysis be a part of the Plan.  The failure to address same is not a waiver of any subsequent challenges which may be brought by third parties.

The amounts to be paid under the Plan assume a continuous monthly payment of adequate protection to the Effective Date. It is intended that payments be made monthly through Confirmation and the Effective Date. To the extent there is a gap in time between Confirmation and the Effective Date, the Debtor shall make its monthly adequate protection payment until the 5th day of the month following the payment of the final Adequate Protection which occurred before the last day on which an appeal from an order of the Court confirming the Debtor's Plan of Reorganization may be taken under applicable law and no such appeal has been taken or, if any appeal has been taken, the first business day following the 5th day of the month after all appeals have been exhausted and the Plan may be put into effect, whichever is later.  Payment of Adequate Protection shall not be suspended during the appeal period.

The Plan proposes to pay DLL whose claims are treated in Classes Nineteen through Twenty-One the balance due on the filing date less the adequate protection payments.  The obligations shall be paid in monthly installments over a term of 12 years with interest fixed at six (6%) per annum.  The pre-petition promissory notes, loan agreements and security agreements evidencing the Loans will remain in force and effect post-confirmation in accordance with their terms, except to the extent that the terms of payment of the indebtedness are expressly modified by the Plan or the Stipulation and Agreed Order as provided above.

All of DLL's rights under applicable non-bankruptcy law that existed immediately prior to the commencement of Debtor's bankruptcy case shall remain unaltered and unchanged unless specifically altered or changed by the Plan. So long as the Debtor is not in default under the payments required under the loan documents or the Plan, except to the extent there is an inconsistency between the Plan provisions and the loan documents where the Plan shall control, the Debtor shall not be in default of its obligations to this creditor.  Any other rights or remedies are set forth in the sections entitled Covenants of the Debtor and Events of Default and that are detailed in Sections B and C below.

Upon Confirmation of the Debtor's Plan, all obligations to DLL shall be deemed to have been reinstated pursuant to the terms of the Plan, as if no default in payment or otherwise had ever occurred.

23

The amounts disclosed reflect payment of thirteen adequate protection payments. Additional payments will be made to the Effective Date and all payments shall be applied to the amounts due upon date of the filing of the Chapter 11 and the amounts due thereafter shall be reduced to reflect the payments thereon.

**Class Nineteen** consists of the claim of De Lage Landen Financial Services, holder of a Note defined in the Proof of Claim as Account No. 24434124000001. The obligation secured by a 2001 Manitowoc 275 Ton Crawler crane, Serial Number 999-1057 known as Crane #51 of the Baldwin fleet had a balance due on the filing date of $1,418,535.12. Adequate Protection payments have been paid to date. The remaining balance of approximately $1,322,154 less adequate protection payments made to DLL prior to the Effective Date shall be paid by equal monthly installment payments payable over a term of 12 years at interest fixed at 6% per annum. The payments in years 1 and 2 shall be in the monthly sum of $11,329.00 and shall increase in years 3-12 to $13,346.00. Upon Confirmation of the Debtor's Plan, all obligations hereunder to DLL shall be deemed to have been reinstated pursuant to the terms of the Plan, as if no default in payment or otherwise had ever occurred. The Claimant shall retain such other security as existed on Petition date. The Debtor shall make the payments set forth under the Plan and shall satisfy the claim in full. Class Nineteen is impaired.

**Class Twenty** consists of the claim of De Lage Landen Financial Services, the holder of a Note defined in the Proof of Claim as Account No. 24434125000001 secured by a 2001 Manitowoc 275 Ton Crawler crane, Serial Number 999-1055 known as Crane #50 of the Baldwin fleet, had a balance due on the filing date of $1,670,952.77. After application of Adequate Protection payments have been paid to date. The remaining balance of $1,559,107.49 less adequate protection payments made to DLL prior to the Effective Date shall be paid by monthly installment payments payable over a term of 12 years at interest fixed at 6% per annum. The payments in years 1 and 2 shall be in the monthly sum of $13,360.00 and shall increase in years 3-12 to $15,738.00. Upon Confirmation of the Debtor's Plan, all obligations hereunder to DLL shall be deemed to have been reinstated pursuant to the terms of the Plan, as if no default in payment or otherwise had ever occurred. The Claimant shall retain such other security as existed on Petition date. The Debtor shall make the payments set forth under the Plan and shall satisfy the claim in full. Class Twenty is impaired.

**Class Twenty-One** consists of the claim of De Lage Landen Financial Services, the holder of a Notes as evidenced by the information contained in the Proof of Claim. The obligation known as Account No. 24434127000001 secured by a 2001 Manitowoc, 275 Ton Crawler crane, serial number 999-1053 known as Crane #49 of the Baldwin fleet had a balance due on the filing date of $1,663,940.78. Adequate Protection payments have been paid to date. The remaining balance of $1,552,564.82 less adequate protection payments made to DLL prior to the Effective Date shall be paid by eqaul monthly installment payments payable over a term of 12 years at interest fixed at 6% per annum. The payments in years 1 and 2 shall be in the monthly sum of $13,304.00 and shall increase in years 3-12 to $15,672.00. Upon Confirmation of the Debtor's Plan, all obligations hereunder to DLL shall be deemed to have been reinstated pursuant to the terms of the Plan, as if no default in payment or otherwise had ever occurred. The

24

Claimant shall retain such other security as existed on Petition date. The Debtor shall make the payments set forth under the Plan and shall satisfy the claim in full. Class Twenty One is impaired.

**Class Twenty-Two** consists of the holders of allowed or undisputed, non-insider unsecured claims of general creditors. The claims are in the approximate sum of $482,750.38 based upon the proofs of claim filed or the Debtors books and records, including the Commonwealth of Massachusetts, which has filed a Proof of Claim containing a claim of $943.01. The sums are exclusive of the sums owed to creditors for lease rejection claims of which there are none anticipated, and are exclusive of the claim of Class Fifteen. There are no known objections to claims to be brought. In the event that there are objections, then the causes of action shall be filed prior to the Effective Date. The Class Twenty-One Claimants shall be paid a pro rata dividend distribution of funds in the amount of $289,084.00 from the Debtor, which, exclusive of the Class Fifteen creditor would result in a dividend of approximately 60% of the sums as filed or scheduled. If the Class Fifteen Creditor shares in the distribution, then the creditor claim amounts sharing in the pro rata distribution will be the sum of $2,110,981.81 and shall result in a dividend distribution of approximately 14% plus a pro rated share of the sums paid to Class Fifteen as adequate protection. As of the filing of the Plan, the payments totaled the sum of $125,854.04. The pro rata distribution would be approximately 20% of the sums as filed or scheduled.

The payments shall be in three equal monthly installments of approximately $96,361.47 for a total distribution of $289,084.00, unless the Class Fifteen creditor is required to turnover the adequate protection paid, whereupon, the sums will be distributed upon the Effective Date of the Plan or upon receipt, if after the Effective Date. The Class Fifteen creditor shall not be entitled to share in the distribution of the pro rata sums unless it has repaid the Adequate Protection sums received during the course of the proceedings. The first installment shall be paid on the Effective Date of Confirmation. The Class Twenty Two Claimants are impaired.

**Class Twenty-Three** consists of the equity security holders. Because the Debtor is insolvent, equity security holders shall receive no dividend and the stock canceled. New stock shall be issued to the Baldwin's in consideration of the contribution of new value in the sum of $100,000.00. The capital contribution is not a loan and shall be used to satisfy administrative claims or initial dividend distributions or as working capital for the reorganized debtor. The contributions shall not be repaid to the contributors nor shall the sums be withdrawn nor shall distributions be made to the contributors until the payments prescribed under the Plan are satisfied in full unless Sovereign Bank shall authorize same in writing upon written request by Baldwin management. The Plan provides for the issuance of stock in the reorganized company to any Baldwin in proportion to the amounts contributed as new value. The contributions of new value shall be in the amount of $20,000 by each of the following: William Baldwin, Sr.; Ernest Baldwin, Sr.; Mark Baldwin; Ernest Baldwin, Jr.; and William Baldwin, Jr.

25

## B.    COVENANTS OF THE DEBTOR

Until all required payments on the Indebtedness and all other obligations under this Plan have been paid, made, and performed in full, Baldwin agrees to perform, observe and comply with the following covenants. Failure to honor one of the financial covenants shall be an event of default. In addition, except as modified by the terms of the Plan of Reorganization and the Events of Default detailed in the Plan, each creditor shall retain such provisions as were in contained in the individual creditors loan documents which were existing at the time of the filing, or to the provisions in the Plan that exclude or supplement the loan documents.

1.    EBITDA/Debt Service Ratio: Baldwin shall not permit, for any two consecutive quarters, the ratio of Baldwin's EBITDA to Debt Service to be less than 1.1 to 1.0. This ratio shall first be measured monthly, on a cumulative basis, commencing with the first full month following the date of confirmation of Baldwin's plan of reorganization and shall thereafter be measured as of the last day of each consecutive month thereafter covering the period dating back to and including the first month measured hereunder. Commencing with the first full month of Baldwin's first fiscal year following confirmation of Baldwin's plan of reorganization, this ratio shall be measured monthly on a fiscal year to date basis.

(a)    "EBITDA" for any applicable period shall mean income from continuing operations before the payment of interest and taxes, plus depreciation and amortization, determined in accordance with GAAP, but minus unfinanced capital expenditures, minus cash taxes actually paid and minus distributions to shareholders, if any. "Distributions", as used above, shall mean all payment or distributions to shareholders in cash or in property other than reasonable salaries, bonuses and expense reimbursements. "Debt Service", as used above, for any period shall mean actual interest and principal payments contractually required to be made on all indebtedness.

(b)    The above EBITDA to Debt Service ratio covenant shall replace the following covenants and ratios under the provisions entitled "Financial Covenants and Ratios" in Sovereign's existing loan agreements: "Minimum Income and Cash Flow Requirements", "Tangible Net Worth Requirements", "Tangible Net Worth" and " Net Worth Ratio".

(c )    Baldwin shall continue to deliver to Sovereign, CitiCapital and DLL (hereinafter the Financial Covenant Participants") on a bi-weekly basis, schedules of accounts receivable, accounts payable and crane usage reports in the same format in which Baldwin has delivered such reports during Baldwin's Chapter 11 case.

(d)    Baldwin shall deliver to the Financial Covenant Participants, upon reasonable request, such other materials, reports, documents and information relating to the Collateral as the Financial Covenant Participants may request. Baldwin shall also deliver to its Financial Covenant Participants, as Financial Covenant Participants may require, lists, descriptions and designations of Collateral as the creditors may request to identify the nature, extent and location of the Collateral.

26

The foregoing provision shall replace provisions of the secured creditors existing loan agreements entitled "Collateral Schedules", "Collateral Schedules and Locations" or "Accounts Receivable Agings".

2.    Baldwin shall continue to deliver to the Financial Covenant Participants a monthly income statement, balance sheet and statement of cash flows for each month on or before the fifteenth day of the immediately following month, such reports to be in the same form as the operating reports which Baldwin has filed with the Office of the United States Trustee and delivered to Sovereign during Baldwin's Chapter 11 case;

3.    Baldwin shall deliver to the Financial Covenant Participants by the last business day of the first week of each month a (i) budget for the month, (ii) comparison of budget and actual income and expenses for the preceding month, with a written explanation of any variance, (iii) monthly account payables report, (iv) monthly accounts receivable report, with an update on collection activities and (v) crane utilization report.

4.    Baldwin shall deliver to Financial Covenant Participants, as soon as available, but in no event later than 120 days after the end of each fiscal year: (i) copies of Baldwin's income statement, balance sheet and statement of cash flows for the year ended; and (ii) Baldwin's income tax returns for the year ended reviewed by Certified Public Accountant satisfactory to Sovereign;

5.    Baldwin shall maintain its books and records in accordance with generally accepted accounting principles ("GAAP"), applied on a consistent basis. All financial reports required to be provided to Financial Covenant Participants shall be prepared in accordance with GAAP, applied on a consistent basis. Except as otherwise provided, all computations made to determine compliance with Baldwin's EBITDA to Debt Service ratio covenant described above shall be made in accordance with GAAP, applied on a consistent basis and shall contain language stating that this information has been subjected to the inquiry and analytical procedures applied in the review of the basic financial statements and we are not aware of any material modifications that should be made to that information" or as set forth on the Corporate Tax Return, language that states "Under penalties of perjury, I declare that I have examined this [report] return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge." *(Form 1190 Department of the Treasury, Internal Revenue Service).*

The foregoing provisions shall replace provisions in existing loan agreements entitled "Financial Reporting", "Financial Statements", "Interim Statements Required", "Annual Projections" and "Financial Records", if any.

6.    All "Defaults" and "Events of Default" in Financial Covenant Participants' existing loan agreements shall remain unchanged.

27

7.    The Financial Covenant Participant's existing loan agreements shall be deemed to include all of the Promissory Notes, Business Loan Agreements, Change in Terms Agreement, Commercial Security Agreements, Commercial Guarantees and other agreements, instruments and documents presently in effect between the lender and Baldwin.

8.    At all times Baldwin shall keep its property and equipment of an insurable nature adequately insured, and shall deliver to the Financial Covenant Participant's copies of all (i) insurance policies and (ii) renewals of such insurance policies. The level of insurance for each Crane and all attachments shall equal the replacement value of such Crane and attachments, if available.

9.    The Financial Covenant Participant's shall have the right to inspect their collateral at least once every calendar quarter, and Baldwin must make every reasonable effort to accommodate requests. The Financial Covenant Participant's shall not disturb or impair or interfere with Baldwin's ability to conduct business and shall arrange for such inspections to be performed at a time that will accommodate the Baldwin performance schedules. The financial covenant participant shall give Baldwin at least five (5) business days notice prior to any visit or inspection.

10.    Baldwin shall timely pay all taxes due on the Cranes.

11.    No tax liens or judgment liens may be filed on any of the Cranes.

12.    If Baldwin fails to timely pay an installment of principle and/or interest due, the provisions of the Loan documents of the individual Financial Covenant Participant shall control.

13.    The Financial Covenant Participants shall have such rights as are permitted under their existing loan documents with respect to examination and audits of the Baldwin books and records.

## ARTICLE III.  PROVISION FOR THE EXECUTION OF THE PLAN

1.    In order to participate in the distribution under this Plan, a proof of claim must be filed with the Bankruptcy Court on or before the bar date established by the Court unless scheduled by the Debtor as liquidated in amount, not disputed and not contingent in which event the claim will be allowed as scheduled.

2.    "Confirmation" shall mean the date upon which the Bankruptcy Court enters an order confirming the Plan under Section 1129 of the Bankruptcy Code.

3.    " Effective Date" shall mean 30 days following the first business day following the last day on which an appeal from an order of the Court confirming the Debtor's Plan of Reorganization may be taken under applicable law and no such appeal has been taken or, if any appeal has been taken, the first business day following the date upon which all appeals have been exhausted and the Plan may be put into effect, whichever is later. For purposes of distribution

28

hereunder the phrase "paid upon the Effective Date" shall mean on the Effective Date or within a reasonable period thereafter so as to allow the writing and mailing of dividend checks such order is pending whichever is later.

4.     As of the Confirmation, the property of the estate created under Section 541 of the Bankruptcy Code shall be vested in Baldwin Crane & Equipment Corporation, Inc. free and clear of any and all claims except as otherwise provided herein or in the order of the Bankruptcy Court confirming the Plan.

## ARTICLE IV. ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS

The Debtor reserves the right to apply to the Court at any time prior to Confirmation or to submit any modification of the Plan to accept or reject any and all contracts which are executory, in whole or in part.

## ARTICLE V. RETENTION OF JURISDICTION

The Court shall retain jurisdiction of these cases pursuant to the provisions of Chapter 11 of the Code, until the final allowance or disallowance of all claims affected by the Plan, and, in addition shall retain jurisdiction to determine the following matters:

1.     In order to participate in the distribution under this Plan, a Proof of Claim must have been filed with the Bankruptcy Court on or before the bar date established by the Court unless scheduled by the Debtor as liquidated in amount, not disputed and not contingent in which event the claim will be allowed as scheduled.

2.     As of the Confirmation, the property of the estate created under Section 541 of the Bankruptcy Code shall be vested in the Debtor free and clear of any and all claims except as otherwise provided herein or in the order of the Bankruptcy Court confirming the Plan.

3.     The Plan provides that any and all unexpired leases and executory contracts, which existed as of the commencement of the Chapter 11 case, will be rejected on the Confirmation Date except those leases and executory contracts that the Debtor elects to assume. The Debtor intends to assume the leases as set forth above. Any person deeming himself injured by such rejection will hold an unsecured Class Ten claim for any damages sustained by reasons of the rejection. There are no known leases that shall be rejected in the proceedings.

4.     The Plan provides for the Court's retention of jurisdiction for specified purposes regardless of the entry of a final decree closing the Chapter 11 case.

5.     The Plan shall provide for the Court's retention of jurisdiction to determine disputes over defaults alleged under the Plan provisions.

29

6.    The Court shall retain jurisdiction of these cases pursuant to the provisions of Chapter 11 of the Code, until the final allowance or disallowance of all claims affected by the Plan, and, in addition shall retain jurisdiction to determine the following matters:

7.    To enable the Debtor to consummate the Plan and to resolve any dispute thereto including those creditors whose claims are scheduled by the Debtor as disputed or which amounts due and payable are disputed;

8.    To enable the Debtor to consummate any and all proceedings which they may bring prior to the entry of the order of confirmation to set aside liens or encumbrances, and to recover any preferences, transfers, assets or damages to which it may be entitled under all applicable provisions of the Code or other federal, states or local law;

9.    To hear and determine all claims arising from the rejection of any executory contracts, including leases, and to consummate the rejection of executory contracts rejected hereunder or with respect to which an application for rejection was filed prior to the entry of the order of confirmation;

10.    To liquidate damages in connection with any disputed, contingent or unliquidated claims;

11.    To adjudicate all controversies concerning the classification or allowance of any claims or interest;

12.    To adjudicate all claims including amounts and issues relating to the validity of asserted security interests in any property of the estate including any property transferred hereunder or in any proceeds thereof.

13.    To adjudicate all matters affecting the entry of a final decree closing the Chapter 11 case.

14.    To adjudicate all disputes over defaults alleged under the Plan provisions.

15.    To adjudicate all claims or controversies arising out of any purchases, sales or contracts made or undertaken by the Debtor during the pendancy of this Chapter 11 case;

16.    To recover all assets and property of the estate wherever located; and

17.    To make such other as are necessary or appropriate to carry out the provisions of this Plan.


Respectfully submitted,
**BALDWIN CRANE & EQUIPMENT CORPORATION L.T.D., INC.**


/s/ Mark S. Baldwin
Mark S. Baldwin, Chief Executive Officer


DATED:    January 24, 2005

31

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: ) | |
| ) | |
| BALDWIN CRANE & EQUIPMENT CORPORATION) | Chapter 11 |
| ) | Case No. 03-18303-JNF |
| DEBTOR ) | |
| ) | |

ORDER CONFIRMING MODIFIED
THIRD AMENDED PLAN OF REORGANIZATION DATED APRIL 1, 2005

At Boston, in said District, this 5th day of April 2005.

This matter having come before me for hearing on confirmation of the Third Amended Plan of Reorganization (the "Third Amended Plan") submitted by Baldwin Crane & Equipment Corporation (the "Debtor"/"Baldwin"), the within Debtor in the above-captioned proceeding ("Proceeding") (any capitalized terms not otherwise defined herein shall have the meaning set forth in the Third Amended Plan). The Debtor having represented that notice of said hearing together with the Third Amended Plan and the Debtor's Third Amended Disclosure Statement conditionally approved by the Court on January 26, 2005 (the "Disclosure Statement") was given by mailing copies thereof by electronic or first class mail to all known holders of claims and interests and to other parties entitled thereto by the Debtor on or about February 11, 2005.

There were objections to confirmation of the Third Amended Plan filed by CitiCapital Commercial Corporation and CitiCapital Technical Finance, Inc., IUOE Local 4 Benefit Funds and Sovereign Bank (the "Objectors"). The Objectors either withdrew said objections, reported that said objections had been resolved by proposed modifications of the Third Amended Plan or said objections were overruled by the Court. The Debtor has filed together with this Order its Modified Third Amended Plan of Reorganization dated April 1, 2005 containing the modifications resolving certain of the objections and otherwise conforming the Plan to the agreements of the parties and the rulings of this Court.

Following the hearing held on March 30, 2005, the Court having heard and considered arguments of counsel for the Debtor in support of confirmation of the Plan, counsel to the Objectors, the affidavits of Mark Baldwin, Ernest Baldwin, Jr., David L. O'Connell, Louis Tomolonis and Stanley A. Martin filed in support of confirmation of the Plan, the Proceedings to date, and the terms of the Modified Third Amended Plan dated April 1, 2005 (hereinafter the "Plan" or "Modified Third Amended Plan") and Disclosure Statement, the Court hereby makes the following findings of fact, conclusions of law, and orders:

1.    The Plan complies with all applicable provisions of Chapter 11 and the other provisions of the United States Bankruptcy Code ("Code").

2.    The Debtor has complied with all of the applicable provisions of the Code.

3.    The Plan has been proposed in good faith and not by any means forbidden by law.

4.    Any payment made or to be made by the Debtor for costs and expenses in connection with the Proceedings or in connection with the Plan and incident to the Proceedings has been approved by or is subject to approval of the Court as reasonable.

5.    The Debtor has disclosed the identity, to the extent presently known, of the individuals proposed to serve, after confirmation of the Plan, as directors or officers of the Debtor and the continuance in office of such individuals is consistent with the interests of creditors and equity security holders and with public policy. The Debtor has disclosed the identity of any insider who will be employed by the reorganized Debtor, and the nature of any compensation for such insider.

6.    No government regulatory commission has jurisdiction over any "rates" of the Debtors.

7.    With respect to each impaired class of claims or interests, each holder of a claim or interest of such class (i) has accepted the Plan; or (ii) will receive or retain under the Plan on account of such claim or interest property of a value, as of the effective date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on this date.

8.    Based upon the Memorandum of Acceptance describing balloting on the Plan filed by Counsel to the Debtor, the Plan has been accepted by Classes 2, 7, 11, 19, 20, 21 and 22. The holder of the claims in Classes 5,14,15,16,17, and 18, timely voted to reject the Plan but subsequently agreed to accept the treatment of its claims in said Classes as set forth in the Modified Third Amended Plan. With respect to each Class of claims or interests that is impaired under the Plan, the Plan provides as follows:

(a)    With respect to any class of secured claims that is impaired under the Plan and which did not vote to accept or reject the Plan, the Plan complies with 11 U.S.C. Section 1129(b)(2), because it does not discriminate unfairly and is fair and equitable with respect to such class of secured claims because it provides that: (i) the holders of claims in such classes shall retain the liens securing such claims to the extent of the allowed amount of such claims and that each holder of a claim in such class shall receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim of a value, as of the Effective Date of the plan, of at least the value of such holders' interest in its collateral; or (ii) for the sale of any property subject to liens securing such claims free and clear of such liens with the liens to attach to the proceeds and then to be paid to such holder of such claims; or (iii) for the return of the property subject to liens securing such claims to the holder of such liens for the realization by the holder of the indubitable equivalent of such claims.

(b)    With respect to Class 22 general unsecured claims which is an impaired Class of claims under the Plan, the Plan has been accepted by Class 22 which acceptance has been determined without including any acceptance of the Plan by any insider holding a claim or interest in such Class.

(c)    With respect to Class 23 of the Plan, consisting of all equity security holders of the Debtor, the holders of Class 23 and are deemed to have rejected the Plan pursuant to 11 U.S.C. Section 1126(g) because the Plan provides that holders of Class 23 equity interests shall receive no payment or distribution of any kind under the Plan. However, the Plan complies with 11 U.S.C. Section 1129(b)(2)(C), as no interests junior to Class 23 interests shall receive or retain under the Plan, on account of such junior interests, any property.

9.    With respect to the administrative expenses and priority claims described in Article II A. 1 through 5 of the Plan, consisting of: Fees and Expenses of Professionals; Fees of the United States Trustee; Ordinary Course Business Obligations; Priority Claims of Governmental Taxing Authorities and Priority Claims under Collective Bargaining Agreements, the Plan treats such administrative expenses and priority claims in a manner consistent with the provisions of 11 U.S.C. Section 1129(a)(9) and 28 U.S.C. Section 1930.

10.    As described in paragraph 8 (b) above, at least one Class of claims that is impaired under the Plan has accepted the Plan for the purposes of 11 U.S.C. Section 1129(a)(10).

11.    Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor within the meaning of 11 U.S.C. Section 1129(a)(11).

12.    All fees payable under Section 1930 of the Judicial Code, 28 U.S.C. Section 1930, have been paid or will be paid on the Effective Date of the Plan.

13.    The Debtor has no outstanding obligations for retiree benefits as said term is defined in Section 1114 of the Code.

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:

1.    The Modified Third Amended Plan of Reorganization dated April 1, 2005 filed with the Court, is hereby CONFIRMED.

2.    The Court shall retain jurisdiction for the purposes provided under this Order and in Article V of the Plan.

3.    The property of the estate of Baldwin Crane & Equipment Corp. created under Section 541 of the Code shall be, and hereby is, vested in Baldwin Crane & Equipment Corp, the reorganized Debtor, free and clear of all claims, liens, and encumbrances, except as otherwise provided in the Plan and this Order.

4.    The Effective Date under the Plan, in the absence of any appeal of this Order, shall be May 1, 2005. Prior to the Effective Date, the Debtor shall continue making monthly adequate protection payments in previously agreed upon amounts to secured creditors whose collateral the Debtor has retained under the Plan. The Debtor shall timely make the payments proposed in the Plan following the Effective Date.

5.    Notwithstanding representations on page 39 of the Disclosure Statement to the contrary, the Debtor will not seek to sell or to use the sale or insurance proceeds of crane nos. 17 or 26, as described in the Plan, for any purpose, prior to its payment of any claims secured by liens in such cranes.

6.    Except as otherwise provided in the Plan, the Debtor shall be, as of the Effective Date of the Plan, discharged from any claims or debts, as defined in Section 101(5) and Section 101(12) of the Bankruptcy Code, that arose before the date of this Order and any debt or claim of a kind specified in Section 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not a

proof of claim based on such debt was filed or deemed filed under Section 501 of the Bankruptcy Code, or such claim was allowed under Section 502 of the Bankruptcy Code or the holder of such claim has accepted the Plan.

7.    All holders of claims and interests whose claims and interests are discharged under the Plan, including all claims of or by creditors of Baldwin Crane & Equipment Corp. which were or could have been asserted against Baldwin Crane & Equipment Corp. on account of any debt incurred by Baldwin Crane & Equipment Corp., shall be, as of the Effective Date of the Plan, PERMANENTLY ENJOINED from commencing or continuing any proceeding against the Debtor, for enforcing or seeking to enforce such claims or taking any steps which will lead to enforcement of such claims against the Debtor or any property of the Debtor, including without limitation, seeking to create, perfect or enforce any lien against any property of the Debtor, and from all other acts against the Debtor or its property, including but not limited to, those acts described in Section 362(a) of the Bankruptcy Code, except as otherwise provided in the Plan. Nothing in this Order prevents the automatic stay from terminating upon the Effective Date of the Plan.

8.    All trade and service debts and obligations incurred in the normal course of business by the Debtor during these Proceedings or after the entry of this Order shall be paid by the Debtor when due in the ordinary course of business.

9.    Nothing in the Plan or this Order affects or alters the validity, priority or perfection, that existed under applicable law at and immediately prior to the Filing Date, of any liens in any of the Debtor's assets, and all such liens and their pre-petition validity, priority and perfection are retained for the benefit of the holders thereof under the Plan. Notwithstanding the description or inclusion of any Baldwin crane or other asset of the Debtor as collateral in any class of claims or section of or exhibit to the Disclosure Statement or Plan, the rights and remedies of any creditor that existed immediately prior to the Filing Date, to establish and

enforce a lien in such crane or other asset, through legal action or otherwise, are expressly preserved and shall continue in effect on and after the Effective Date of the Plan for the benefit of such creditor.

10.    The Debtor is hereby authorized and directed to take all such action and execute all such documents as are necessary or appropriate to implement, effectuate, and consummate the Plan. This order shall constitute such authority as may be required and may be recorded in all applicable Registries of Motor Vehicles or similar repositories of public records. No further evidence of such authority or approval other than a certified copy of this Order shall be required or necessary.

11.    In the event of any inconsistency between the terms of the Disclosure Statement and the Modified Third Amended Plan of Reorganization, the terms of the Plan shall control. The terms of this Order control over the terms of the Plan and the Disclosure Statement. All of the terms and provisions of the Plan not expressly set forth in this Order are hereby approved and implemented and are in full force and effect as if fully set forth in this Order. Any of the Court's findings and conclusions dictated into the record at the hearing on confirmation of the Plan are incorporated herein by reference.

Dated and entered at Boston, Massachusetts, in said District, this ___ day of April ___, 2005.

Joan N. Feeney, Chief, United States Bankruptcy Judge